KEITH SLENKOVICH (SBN: 129793)
JOSEPH F. HAAG (SBN: 248749)
MATTHEW CHEN (SBN: 253712)
TOBY MOCK (SBN: 265004)
CRYSTAL ROBERTS (SBN: 284622)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Tel. (650) 858-6000
Fax. (650) 858-6100
Keith.Slenkovich@wilmerhale.com
Joseph.Haag@wilmerhale.com
Matthew.Chen@wilmerhale.com
Tobias.Mock@wilmerhale.com
Crystal.Roberts@wilmerhale.com

WILLIAM F. LEE (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel. (617) 526-6000
Fax. (617) 526-5000
William.Lee@wilmerhale.com

*Attorneys for Defendant View, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| SAGE ELECTROCHROMICS, INC., <br><br>Plaintiff, <br><br>v. <br><br>VIEW, INC., <br><br>Defendant. | Case No. 12-6441-SI <br><br>**SUPPLEMENTAL DECLARATION OF BRIAN GRIEDEL IN SUPPORT OF VIEW, INC.'S UNOPPOSED ADMINISTRATIVE MOTION TO FILE A PORTION OF ITS CERTIFICATION OF INTERESTED ENTITIES OR PERSONS UNDER SEAL** |

I, Brian Griedel, Ph.D., hereby declare as follows:

1. I am the Sr. Director of Intellectual Property of View, Inc. ("View"). I am over the age of eighteen and have personal knowledge of and/or have confirmed or otherwise investigated and am competent to testify about the factual matters asserted herein.

2. I submit this supplemental declaration in further support of View's Unopposed Administrative Motion to File a Portion of Its Certification of Interested Entities or Persons Under Seal and in response to the Court's Order re Motion to File Under Seal issued on January 14, 2013 (Dkt. No. 15). As requested by the Court, additional details are provided herein demonstrating why the disclosure of View's confidential investors will result in harm to View and its investors.

3. View's investors include both institutions and individuals. To the best of my knowledge and belief, the identities of certain of View's institutional and individual investors (those identified in View's confidential filing) have never been publicly disclosed. View has taken and continues to take measures to maintain the identities of its confidential investors as confidential, including but not limited to withholding the information from the public domain and by imposing contractual obligations on its investors, employees, and consultants to maintain this information in confidence. While View has disclosed the identity of certain of its other institutional investors, View has done so with permission from the investors and upon careful consideration of the benefits and harms inherent with the public disclosure of those specific investors.

4. The following examples demonstrate why the disclosure of View's confidential investors would be harmful to View and/or its investors:

    a. The public disclosure of View's confidential investors would arm View's competitors (and other entities and individuals) with the identity of investors potentially interested in investing in similar technologies, allowing them to target these investors for future fundraising, thereby increasing their competitive position in the market and potentially reducing the amount of available financing for View.

    b. The public disclosure of View's confidential investors could subject the investors to annoyance or harassment by View's competitors (or other entities or individuals) who

2

are seeking or will seek financing, and who would have not otherwise known the identity of these potential investors. For example, many of View's confidential investors are individuals who do not ordinarily engage in these types of investing activities. Disclosing the identity of these individuals to the public could subject these individuals to unwanted contact and solicitations for investment. This unwanted contact could further impact the investors' willingness to further invest in View, and could likewise result in other lost opportunities for financing from third parties.

   c. The public disclosure of View's confidential investors would also reveal by implication the identities of certain individuals retained by View as technical and/or business consultants. Exposing the identities of View's consultants to its competitors could implicitly disclose confidential trade secret information of View, including strategies concerning the technical features of its products.

   d. The privacy interests of View's confidential investors could be undermined by public disclosure of their identities, which they have made efforts to keep confidential. For example, public disclosure of the investors' private investment activities would reveal information concerning their investment strategies, resulting in potential harm to their competitive position.

   e. The public disclosure of View's investors could further place View at a disadvantage in negotiations with future potential investors, to the extent such investors insist that View maintain their identity as investors confidential. A promise of confidentiality is often a non-financial incentive for making investments in privately held companies. Thus, View could be placed at a disadvantage in future negotiations if it were unable to maintain the confidentiality of its existing investors, the implication being that it would likewise be unable to do so for future investors.

Executed this 22nd day of January, 2013, in Milpitas, California.

               _____
                   Brian Griedel