# EXHIBIT C

# WILMERHALE

*By E-Mail and Federal Express*

April 12, 2013

SAGE Electrochromics, Inc.
One Sage Way
Faribault, MN 55021

c/o    Terrence P. McMahon
McDermott Will & Emery LLP
275 Middlefield Rd., Suite 100
Menlo Park, California 94025

**Keith Slenkovich**

+1 650 858 6110(t)
+1 650 858 6100(f)
keith.slenkovich@wilmerhale.com

Re:  <u>*Sage Electrochromics, Inc. v. View Inc.*, Case No. 12-6441; United States Patent App. No. 12/645,159</u>

Dear Sir:

      Our client View, Inc. ("View") is the assignee of pending U.S. Pat. App. No. 12/645,159, expected to issue as U.S. Pat. No. 8,432,603 (herein, the "'603 patent") on or around April 30, 2013. It has come to our attention that SAGE Electrochromics, Inc. ("SAGE") is utilizing, by the existing and anticipated future operation of its new manufacturing facility in Faribault, MN, a method of fabricating electrochromic glass products that likely infringes one or more claims of the '603 patent, including but not limited to pending independent claim 62 (anticipated to issue as independent claim 1) (hereinafter referred to as "claim 62 of the '603 patent"). Enclosed for your reference is a copy of the allowed claims of the '603 patent and corresponding issue notification.

      Claim 62 of the '603 patent is directed to a method of fabricating electrochromic glass. While it appears that SAGE's new manufacturing facility, as publicly described, would readily be capable of infringing at least claim 62 of the '603 patent, neither we nor View have complete access to the methods used by SAGE for manufacturing electrochromic glass products in its new facility. Furthermore, although SAGE has publicized that its new facility would be in commercial operation by the first quarter of 2013, we have not been able to gain access to any electrochromic glass products manufactured by SAGE in the facility. Since SAGE (and likely SAGE alone) does have access to this information, we write to request that you provide a suitable explanation sufficient to demonstrate that SAGE does not use the patented methods claimed in the '603 patent, including by providing sufficient supporting documentation and making SAGE's new manufacturing facility available for inspection by us to verify the same, as specified below.

      First, it appears from publicly available materials that SAGE is utilizing in its new facility "a method of fabricating an electrochromic window, the method comprising sequentially depositing layers on a glass substrate while in a substantially vertical orientation at multiple

SAGE Electrochromics, Inc.
c/o Terrence P. McMahon
April 12, 2013
Page 2

**WILMERHALE**

deposition stations . . . wherein the glass substrate is in the substantially vertical orientation during translational movement between multiple stations depositing the layers on the glass substrate." We further have reason to believe that SAGE utilizes in its new facility a "single pass integrated vacuum deposition system . . . wherein the glass substrate does not leave the integrated vacuum deposition system at any time during the sequential deposition of the electrochromic layer and the counter electrode layer." If, however, SAGE contends that it does not (and will not) practice the foregoing in its new manufacturing facility, we request that SAGE provide to us by no later than April 26, 2013, a suitable explanation substantiating its contention, including by providing sufficient supporting documentation and making SAGE's new manufacturing facility available for inspection by us to verify the same.

Second, it further appears that SAGE has in the past utilized a method of fabricating "an inorganic and solid state electrochromic device having a low level of electric short related defects, visible during tinting of the glass," and that SAGE has in the past further utilized a method of depositing an electrochromic stack in sequential deposition stations comprising: a first deposition station "depositing a tungsten oxide electrochromic layer," a second deposition station "depositing a nickel tungsten oxide counter electrode layer . . . to form a stack of the electrochromic device including the electrochromic layer and the counter electrode layer," a third deposition station for "depositing lithium," and a fourth deposition station for "depositing a transparent conductive oxide layer." It further appears that SAGE has used in the past a glass substrate with "a size of at least 20 x 20 inches and up to about 80 inches by 120 inches." If, however, SAGE contends that it no longer practices (and does not intend to practice) the foregoing in its new manufacturing facility, we again request that SAGE provide by April 26, 2013 a suitable explanation substantiating its contention, including by providing sufficient supporting documentation and making SAGE's new manufacturing facility available for inspection by us to verify the same.

Finally, with regard to dependent claims 64–74 and 80–83 attached hereto (anticipated to issue as dependent claims 2–16), please likewise provide by April 26, 2013 a suitable explanation sufficient to substantiate any contention that SAGE does not infringe such claims, including by providing supporting documentation and making SAGE's new manufacturing facility available for inspection by us to verify the same.

To the extent SAGE considers any or all of the foregoing requested information to be confidential and/or proprietary to SAGE, we would be willing to agree that such information be maintained by outside counsel for View as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information under the terms of the default Protective Order authorized by the Northern District of California pursuant to Patent L.R. 2–2.

SAGE Electrochromics, Inc.
c/o Terrence P. McMahon
April 12, 2013
Page 3

WILMERHALE

     As you are aware, on March 4, 2013, View filed its First Amended Answer and Counterclaims in Northern District of California action number 3:12-cv-06441-JST (the "Action"). If we have not received the above requested information from you regarding the '603 patent by April 26, 2013, including your agreement to permit an appropriate inspection of your new facility by outside counsel for View, we will be forced to conclude that SAGE is infringing the '603 patent, and upon issuance of the '603 patent on April 30, 2013, View will seek to amend its Answer and Counterclaims in the Action to add counts of infringement for the '603 patent.

     Please let me know if you have any questions or would like to discuss the above.

     Sincerely,

     Keith Slenkovich

Enclosure

Cc: Client