TERRENCE P. MCMAHON (SBN: 71910)
TERRY W. AHEARN (SBN: 216543)
McDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA 94025-4004
Telephone:     +1 650 815 7400
Facsimile:     +1 650 815 7401
tmcmahon@mwe.com
tahearn@mwe.com

SARAH CHAPIN COLUMBIA (admitted pro hac vice)
LEIGH MARTINSON (admitted pro hac vice)
HASAN M RASHID (admitted pro hac vice)
McDERMOTT WILL & EMERY LLP
28 State Street
Boston, Massachusetts 02109
Telephone:     (617) 535-4000
Facsimile:     (617) 535-3800
scolumbia@mwe.com
lmartinson@mwe.com

Attorneys for Plaintiff and Counterclaim
Defendant SAGE Electrochromics, Inc.

KEITH SLENKOVICH (SBN: 129793)
JOSEPH F. HAAG (SBN: 248749)
RUSSELL TONKOVICH (SBN: 223280)
TOBY MOCK (SBN: 265004)
CRYSTAL ROBERTS (SBN: 284622)
WILMER CUTLER PICKERING HALE
AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel: 650.858.6000
Fax: 650.858.6100
Keith.Slenkovich@wilmerhale.com
Joseph.Haag@wilmerhale.com
Russell.Tonkovich@wilmerhale.com
Tobias.Mock@wilmerhale.com
Crystal.Roberts@wilmerhale.com

WILLIAM F. LEE (pro hac vice)
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: 617.526.6000
Fax: 617.526.5000
William.Lee@wilmerhale.com

Attorneys for Defendant and Counterclaimant
View, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **SAGE ELECTROCHROMICS, INC.**, a New Jersey Corporation,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>    v.<br><br>**VIEW, INC**., a Delaware Corporation,<br><br>    Defendant and Counterclaimant. | **CASE NO.  C 12-06441 (JST)**<br><br>**JOINT STIPULATED AND [PROPOSED] ORDER REGARDING DOCUMENT PRODUCTION PROTOCOL** |

Plaintiff and Counterclaim-Defendant SAGE Electrochromics, Inc. ("SAGE") and Defendant and Counterclaimant View, Inc. ("View") hereby stipulate as follows:

## A.    DEFINITIONS

The following definitions shall apply for purposes of this agreement.

1.      "The Litigation" refers to the above-captioned case, *Sage Electrochromics, Inc. v. View, Inc.*, Case No. C12-06441.

2.      "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

3.      "Paper Discovery" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(l) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

4.      "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes ESI, Paper discovery, and product samples.

5.      "Email" means an electronic means for communicating written information through non-telephone systems that will send, store, process and receive information.

6.      "Format" means the internal structure of a file, which defines the way it is stored and used.

7.      "Native Format" means the format of ESI in the application in which such ESI was originally created.

8.      "Party" or "Parties" means Plaintiff SAGE Electrochromics, Inc., and Defendant View, Inc.

9.      "Plaintiff" refers to Plaintiff and Counterclaim Defendant SAGE Electrochromics, Inc.

10.     "Defendant" refers to Defendant and Counterclaimant View, Inc.

11.     "Producing Party" means a Party that produces documents.

12.     "Receiving Party" means a Party to whom documents are produced.

13.     "Responsive Document" means any document, excluding source code, that is responsive to any document requests served on the Producing Party in the Litigation that the Producing Party has agreed to produce or that the Producing Party has been ordered to produce by the Court.

14.     "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

15.     "Production Volume" means a unique alpha-numeric volume name representing a range of Documents (*i.e.*, batch) sent to the Receiving Party by the Producing Party.  The Production Volume is named consecutively beginning with "[Party Name]001" and continuing sequentially until all documents have been produced.

**B.     SCOPE**

1.     The procedures and protocols set forth in this Document Production Protocol shall govern the production of Responsive Documents between the Parties in the Litigation. Any practice or procedure set forth herein may be varied by written agreement of the Parties. By agreeing to this protocol, the parties do not admit that the production of ESI is necessary or appropriate for any given document request. The parties reserve all rights to make objections when responding to document requests.

2.     Nothing in this Document Production Protocol establishes any agreement as to either the temporal or subject matter scope of discovery in the Litigation. Nothing in this protocol creates an obligation by any party to produce ESI on back-up tapes or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium.

3.     The Parties reserve the right to request the production of documents from noncustodial sources or individuals that were not identified pursuant to Paragraph G and that the

requesting Party has a good faith belief possess Responsive Documents.

4.      The Parties shall not be obligated under this Document Production Protocol to produce any ESI that is no longer within their possession, custody or control (*i.e.*, lost or deleted) as a result of the routine, good-faith operation of an electronic information system, unless the Party requesting such ESI establishes that there is good cause to believe that the Party from whom such ESI is being requested intentionally failed to preserve, deleted or destroyed the ESI while under an obligation to retain it.

5.      Notwithstanding anything to the contrary herein, the following document types are not discoverable in the Litigation except upon a showing of good cause:

    a.      Recorded telephone messages, including voice-mail messages attached to email messages.

    b.      Instant messaging, text message or SMS communications.

    c.      Storage media created for disaster recovery.

    d.      Temporary data stored in a computer's random access memory or RAM.

6.      The Parties shall meet and confer to resolve any disputes that arise under this Document Production Protocol. In the event the Parties cannot reach agreement on a disputed matter, the Parties shall submit the matter to the District Court Judge or designated Magistrate for the Litigation.

7.      This Document Production Protocol does not apply to the protocol for the discovery of Source Code defined in any Stipulated Protective Order filed with the Court.

8.      Discovery Protocol regarding Electronic Mail[1]

    a.      General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email, parties must propound specific email production requests.

    b.      Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

---

[1] Source: Model Order on E-Discovery in Patent Cases.

c.  Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

d.  Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe. The parties shall cooperate to test proposed search terms prior to committing to their use.

e.  Each requesting party shall limit its email production requests to a total of five (5) custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for up to five (5) additional custodians per producing party, upon showing a distinct need based on the size, complexity, issues of this specific case, and value of the issues to the case. Should a party serve email production requests for additional custodians beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

f.  Each requesting party shall limit its email production requests to a total of seven (7) search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for up to three (3) additional search terms per custodian, upon showing a distinct need based on the size, complexity, issues of this specific case, and value of the issues to the case. The Parties shall meet and confer regarding any search terms and/or date filters that the Receiving Party wishes to use and/or the Producing Party intends to use in searching for responsive emails from the identified custodians. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overinclusion. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

C.       **PRODUCTION FORMAT**

1.       **ESI Production Format**: The production data will be exchanged between counsel in encrypted form (i.e., TrueCrypt or PGP).  Each production shall be provided in the following folder structure:

Top-level folder:  This folder will indicate the production volume (i.e., ABC-001)

Sub-folders:

a.       **IMAGES**: This folder will contain multiple sub-folders with ONLY TIFF files in them.  No other type of file should reside in the "IMAGES" folder. Except as provided in Paragraphs C.1 and C.8, ESI shall be produced electronically, as single page, uniquely and sequentially numbered Black-and-White Group IV TIFF files not less than 300 dpi resolution.  Color images should be provided in .JPG format when color is necessary in accordance with Paragraph C.5.  Each file will be assigned a control number which will be the Bates number of the document.  Sub-folders shall not contain more than 1000 images per folder.

b.       **TEXT:** Except with regard to ESI documents that are redacted for privilege, the images shall be accompanied by text files, in UTF8 format, in a separate folder labeled TEXT matching the folder structure of the IMAGES folder.  These text files will contain the extracted text on a document basis, if available. The parties will produce OCR corresponding to any document for which searchable text can reasonably be created. For redacted documents, the parties will produce extracted text for the unredacted portions of those documents.  The text files shall be named to match the endorsed Document Number (a/k/a Bates number) assigned to the image of the first page of the document per Paragraph C.6. Text files shall be accompanied by a Control List File ("LST") located in the DATA folder (see Paragraph C.1.c).

c.       **DATA:**  Documents produced to each party shall include load files and file structures compatible with Concordance version 10 or above and Opticon.

Specifically, the images shall be accompanied by an image cross-reference load file, including an Opticon .OPT file compatible with Concordance version 10 or above providing the beginning and ending endorsed number of each document and the number of pages it comprises.

Opticon Image Load File (.opt) Configuration:

Page level comma-delimited file containing seven fields per line. PageID, VolumeLabel, ImageFilePath, DocumentBreak, PageCount

Example - ABC-JD00030005,,\ABC002\Images\001\ ABC-JD-00030005.tif,Y

The Producing Party shall also provide a data load file ("Data Load File" or ".DAT") corresponding to the TIFF files, compatible with Concordance version 10 or above, that shall contain the metadata, as reasonably available, associated with each Production Field specified in Schedule A. For the avoidance of any doubt, there is no obligation on the Producing Party to create metadata where none exists or is not reasonably available, or to produce metadata where such metadata may comprise attorney work product. However, if metadata is withheld on attorney work product grounds, it shall be logged on a privilege log in accordance with Paragraph F.

As stated in Paragraph C.1.b, text files shall be accompanied by a Control List File ("LST"), which is an ASCII text file that contains the data necessary to link full text documents to database records. The syntax of the LST consists of the Document Number (per Section C.6), followed by the volume path and TEXT folder containing the text file for the full text document. The Document Number reference contained within the LST must match the "Beg Bates" field as defined in Schedule A. An example of the syntax for a LST is as follows:

ABC-000000001,ABC-VOL-001\TEXT\001\ABC-000000001.txt

    d.    **NATIVES**: This folder will contain only native files subject to Paragraphs C.7 and C.8

    2.    **Production of Paper Discovery**: At the discretion of the Producing Party, Paper Discovery may be produced in electronic form. If produced in electronic form, the production will be provided in the same folder structure stated in Paragraph C.1. The data load file stated in Paragraph C.1.c shall contain the metadata associated with each Production Field specified in Schedule B. Paper Discovery produced in electronic form shall be rendered text searchable via OCR or other means by the Producing Party to the extent usable, searchable text can be reasonably created. If a document that was originally generated by a software application (*e.g.*, Microsoft Word or Microsoft Outlook) is collected from a custodian in hard copy form, the

Producing Party has no obligation to locate and produce the electronic file from which the hard copy was created.

3.      **Appearance and Content**: Subject to any necessary redaction, each document's TIFF image file shall contain the same information and same physical representation as the document did in its original format, whether paper or electronic, consistent with the processing specifications set forth in Paragraph D. Documents that present imaging or formatting problems that the Producing Party has not been able to resolve at the time of production shall be promptly identified by the Producing Party by email to the Receiving Party within ten (10) days of the production containing the problematic document(s).

4.      **Document Unitization**: If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes shall be maintained as it existed when collected by the Producing Party. The Producing Party should determine logical Document breaks, and attachments should be preserved. Physical bindings, such as staples and clips, should be considered but should not be used exclusively for determining Document boundaries and attachments.  The Producing Party's efforts should emphasize analyzing the stand-alone value of the Document as a measurement of whether the Document should have its own database record or be included within the same record of another Document.  For example, a lab notebook will be produced as a single document. If unitization cannot be maintained, the original unitization shall be documented in a load file or otherwise electronically tracked in the DocumentBreak field in the .OPT file in accordance with Paragraph C.1.c.

5.      **Color**: Documents containing color need not be produced in color unless the Receiving Party makes a reasonable request pursuant to Paragraph C.7 for the production of ESI in Native Format or pursuant to Paragraph C.2 for production of Paper Discovery in its original format, as applicable.  Color documents will be produced in .JPEG format.

6.      **Document Numbering and Confidentiality Designation for TIFF Images**: Each page of a document produced in TIFF file format shall have a legible, unique numeric identifier ("Document Number"; a/k/a Bates number) not less than eight (8) digits electronically "burned" onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document. The Document Number for each document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "SGE000000"). Plaintiff and each Defendant shall have a unique identifying name.   The confidentiality designation should also be electronically "burned" onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document.

7.      **Production of ESI in Native Format**: In the event that production of a document in TIFF image file format would be impracticable, the Producing Party shall have the option of producing such document in Native Format or other format as agreed by the parties. In all other instances, after initial production of ESI in TIFF image file format, a party must demonstrate a particularized need for production of that ESI in its Native Format. In the event that a Receiving Party requests production of ESI in Native Format or other format, the Producing Party and the Receiving Party shall negotiate in good faith about the timing, cost and method of such production. However, nothing in this Paragraph, except pursuant to Paragraph C.8, is to be read as requiring any Producing Party, absent agreement or court order, to produce ESI in Native Format.

8.      **Native File Exceptions**: Notwithstanding Paragraph C.7, to the extent a Producing Party produces video, animation or audio files, such documents shall be produced in their Native Format.   Further, a requesting party may request the production of Excel files in native format if production in TIFF format in the first instance renders the document indecipherable.  Such requests shall not be unreasonably denied.

9.      **De-duplication**: To the extent identical copies of documents (*i.e.*, documents with

identical hash values) appear in the files designated and agreed-upon under Paragraph G, the Producing Party need only produce one such identical copy for that source.   Email messages and their attachments shall be treated as a single file for purposes of de-duplication.

10.    **Production Media**: The Producing Party shall produce document images, load files and metadata on hard drives, CDs, DVDs or other mutually agreeable media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of documents on the Production Media, the Production Volume, and the Document Number ranges of the documents in that production (*e.g.*, "SAGE Production March 1, 2010, SGE0000123 - SGE0000456").   To the extent that the Production Media includes any information designated as "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" or any similar type of designation under any Stipulated Protective Order filed with the Court, or other order or agreement, the label on such Production Media shall indicate that the Production Media includes information so designated. Production Media shall include text referencing the case name and number. Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Document Number range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media shall be encrypted, with the Parties to agree on a decryption key prior to production. If any piece of Production Media is known to have any physical defect, electronic defect or damaged data or is infected with any virus or other harmful software of any kind, it should be clearly labeled so that appropriate care can be taken during its examination. Alternatively, a Party may remove any virus or defect before production but must inform any Receiving Party of any such efforts.  If any piece of Production Media is unusable by the Receiving Party, the Producing Party must provide a replacement Production Media as soon as reasonably practicable.

11.    **Original Documents**: Nothing in this Document Production Protocol shall

eliminate or alter any Party's obligation to retain: (1) documents in Native Format, including associated metadata, of all ESI produced in the Litigation pursuant to Paragraph C; and (2) original hard copy documents for all Paper Discovery produced in the Litigation pursuant to Paragraph C.2.

12.   **Third-Party Software**: To the extent that documents produced pursuant to this Document Production Protocol cannot be rendered or viewed without the use of proprietary third-party software or software developed by the Parties, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party or the Parties.

13.   **ESI of Limited Accessibility**: If a Producing Party contends that any responsive ESI, excluding storage media created for disaster recovery and document types not discoverable pursuant to Paragraph B.5, is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Requesting Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (*e.g.*, the type of system used to store the ESI) and the places in which such ESI is kept. The parties shall negotiate in good faith concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the District Court Judge, or Magistrate if one is appointed, for the Litigation, who shall determine what burdens may be imposed upon the Producing or Receiving Parties in order to resolve the dispute, the value of the inaccessible data to the case, and whether or to what extent the costs of such production shall be borne by the Producing or Receiving Parties.

14.   **Technical Documents**: For technical documents, including technical specifications, design reviews, functional specifications, test specifications, and other documents

related to the design of the products at issue, the production need only include documents that are maintained "as final" versions in the ordinary course of business.

### D.    PROCESSING SPECIFICATIONS

The Producing Party shall collect and process documents using forensically sound methods that avoid spoliation of data. The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:

1.    Tracked changes, author comments, hidden columns and hidden rows shall be produced "as is" (as maintained by the source in the ordinary course of business).  Pursuant to Paragraphs C.7, and upon a demonstration of particularized need, a party may request production in Native Format.

2.    OLE Embedded files need not be extracted as separate documents.

3.    Presenter notes will be made visible and Microsoft PowerPoint files shall be produced in notes view.

4.    Auto-populated fields, with the exception of auto-populating "page-number" fields, shall be replaced with text indicating the field name. For example, auto-populating "date" fields shall be replaced with the text "DATE" and auto-populating "file path" fields shall be replaced with the text "PATH".

5.    To the extent documents in a foreign language are produced consistent with Paragraph E.1, processing of such documents shall be Unicode-compliant.

### E.    ADDITIONAL ISSUES

1.    **<u>English Language</u>**: To the extent any document exists in more than one language, the document shall be produced in English, if available. If no English version of a document is available, the Producing Party does not have an obligation to produce an English translation of that document.

2.     **Cost Shifting**: All costs associated with production of documents pursuant to this Document Production Protocol shall be borne by the Producing Party. However, the Court will apportion the costs of electronic discovery upon a showing of good cause by the party seeking apportionment. The difference in the costs associated with production of documents between the parties shall not be a basis for apportioning the costs of electronic discovery.

3.     **Protective Order**: The terms of any Stipulated Protective Order filed with the Court governing the inadvertent production of privileged information also govern all production pursuant to this Document Production Protocol.

4.     **ESI Liaison**: Each Party agrees to designate an ESI Liaison who are and will be knowledgeable about and responsible for discussing their respective ESI. Each ESI liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the ESI liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention. Any Party is free to change their designated ESI Liaison by providing written notice to the other Party.

F.     **PRIVILEGE LOG**

1.     Consistent with Federal Rule of Civil Procedure 26(b)(5)(A), a Party withholding or redacting any Responsive Document on the grounds of privilege, immunity or any similar claim shall provide to the Receiving Party a log containing the information described in Paragraph F.2 ("Privilege Log"), except that the Parties shall not be required to provide a Privilege Log for any withheld privileged communications or work product that post-dates the filing of the complaint. Communications may be identified on a privilege log by category, rather than individually, if appropriate. The parties hereby agree to exchange initial privilege logs by no later than three weeks prior to the close of fact discovery.

2.     For each document withheld or redacted, the Privilege Log shall contain the

following information: (i) the date of the document; (ii) the identity of all persons who authored, signed or otherwise prepared the document; (iii) the identity of all persons designated as addressees or copyees, including blind copyees; (iv) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; (vi) the type or nature of the privilege asserted (*e.g.*, attorney-client privilege, work product doctrine, etc.); (vii) the unique document number assigned to the withheld document; and (viii) the Bates numbers corresponding to the first and last page of any redacted document, if the document has been assigned any such Bates numbers.

3.      Any email thread (*i.e.*, a series of emails linked together by email responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be logged as one document and shall be identified by the top-most email in the thread that is withheld or redacted (*e.g.*, if a party withholds on the basis of privilege an email thread consisting of a sent email, a first reply email and a second reply email, the thread shall be identified by the second reply email; if a party produces the same email thread but redacts the sent email and the first reply email, the thread shall be identified by the first reply email). The parties shall not be required to log identical copies of an email that is included in a thread that has been logged in accordance with this Paragraph.

4.      Each member of a family that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be identified (*i.e.*, email attaching memorandum), but members of the same family (to the extent such members are also being withheld or redacted) shall be logged together as a single entry on the Privilege Log.

5.      Pursuant to Fed. R. Evid. 502(d) and Fed. R. Civ. Proc. 26(b)(5), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected

documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

6.      The Parties shall meet and confer to resolve any disputes regarding the privilege log prior to seeking relief from the Court.

**G.      TIMING AND SEQUENCING OF ELECTRONIC DISCOVERY**

1.      To facilitate the timely production of documents pursuant to this Document Production Protocol, each Party shall disclose the following:

        a.      A list of the custodial (e.g. computer hard drives) and non-custodial data sources (e.g. shared network document repositories) that the Parties have preserved and/or collected as potentially containing discoverable information.  A party's disclosure of custodial and non-custodial data sources pursuant to this section shall not constitute an admission by that party that such data sources contain relevant information.

        b.      A list of the non-custodial data sources from Paragraph G.1.a. (other than email related repositories) that the Parties propose are most likely to contain discoverable information, along with a brief description of the source from which the Producing Party agrees to search for Responsive Documents.

        c.      A list of the custodial data sources  from Paragraph G.1.a. (other than email related custodians) that the Parties propose are most likely to have discoverable information along with a brief description of the nature of information within their knowledge or possession.

        d.      Any search terms and/or date filters that the Producing Party intends to use in searching for Responsive Documents from the identified non-custodial data sources.

        e.      For custodian files other than email (e.g., computer hard drives or personal network drives or folders), any search terms and/or date filters that the Producing party intends to use in searching for Responsive Documents from the identified custodial data sources.

f. The parties shall meet and confer in good faith upon completing the foregoing disclosures. Requests for additional data sources or search terms shall be made only upon a showing of particularized need.

2. Pursuant to Paragraph B.8, Discovery Protocol regarding Electronic Mail, general ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence. To obtain email parties must propound specific email production requests in accordance with Paragraph B.8.

3. Phasing: When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI and the initial production will be from a discrete subset of the identified data sources and custodians, to be agreed upon by the parties in accordance with Paragraph G.1. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

## H.   **MANNER OF SERVICE**

The parties will serve all documents related to this Litigation by 11:59 PM Pacific Time on the day of service, and such service shall constitute timely service on that day. Service may be made by electronic mail to counsel of record (identified below), with the filed, submitted, or produced documents attached in .pdf format. When the size of the file containing any such document(s) are too large for service by electronic mail, service may be made by hand delivery or by Federal Express (or similar means) for next day delivery, and a CD, diskette, .ftp site or other means of electronically providing the documents being served shall be provided. Where service is made by next day delivery, service shall be effective on the day sent. The Parties may electronically serve large documents via an FTP site in accordance with the same rules applicable to e-mail.

All discovery requests shall be served by electronic means in .pdf format accompanied by a Word version for use by the receiving party. All responses and objections thereto (but not

necessarily documents produced pursuant to any such request) shall be served by electronic mail in a searchable .pdf format.

The parties designate the following counsel to receive documents pursuant to this stipulation:

| Party | Service by E-mail | Service by Hand |
|-------|-------------------|-----------------|
| View | WHViewIncTeam@wilmerhale.com | Toby Mock<br>950 Page Mill Road<br>Palo Alto, CA 94304 |
| SAGE | SagevView@mwe.com | Terry Ahearn<br>275 Middlefield Road, Suite 100<br>Menlo Park, CA 94025-4004 |

**I.    MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**Schedule A: Production Fields for ESI**

| Field Name (variations of the names below may be used) | Description |
|---|---|
| Volume | The Production Volume as defined in Section A.14. |
| Beg Bates | Number endorsed on first page of document. |
| End Bates | Number endorsed on last page of document. |
| Page Count | Total number of pages in document. |
| Beg Attach | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). |
| End Attach | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). |
| Confidential Designation | The confidential designation endorsed on the document. If no designation is present, a default value of "None" will be coded. |
| Authors(s) | If available, the person(s) who created, wrote, reviewed, signed, or approved the document. If no author is present, a default value of "None" will be coded. |
| FROM | Sender of email message. |
| TO | Recipient of email message in the "To" field. |
| CC | Recipient of email message in the "CC" field. |
| BCC | Recipient of email message in the "BCC" field. |
| Title / Subject | If available, verbatim subject or re: line, or discernible document title appearing on the document's first page. |
| Date Created | If available, the date the document was created. |
| Date Modified | If available, the date the document was last modified. |
| Sent Date | Date email message was sent. |
| Received Date | Date email message was received. |
| Source(s) | Custodial or Non-custodial source(s) from which the document was collected. |

| Field Name (variations of the names below may be used) | Description |
|---|---|
| **File Name** | Original file name. |
| **Document Type** | The file extension describing the type of document (*e.g.*, Microsoft Word document). |
| **FullText** | Relative path to text file containing extracted text or OCR text on Production Media. |
| **Native Path** | Relative path to native file on Production Media. |
| **MD5 Hash Value** | The MD5 hash of the native produced file, not the produced TIFF files. |

1
2

**Schedule B: Production Fields for Paper Discovery**

3
4
5

| Field Name (variations of the names below may be used) | Description |
|---|---|
| **Volume** | The Production Volume as defined in Section A.14. |
| **Beg Bates** | Number endorsed on first page of document. |
| **End Bates** | Number endorsed on last page of document. |
| **Page Count** | Total number of pages in document. |
| **Beg Attach** | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). |
| **End Attach** | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). |
| **Confidential Designation** | The confidential designation endorsed on the document. If no designation is present, a default value of "None" will be coded. |
| **Source(s)** | Custodial or Non-custodial source(s) from which the document was collected. |

6
7
8
9
10
11
12
13
14
15
16
17

18       **IT IS SO STIPULATED**, through Counsel of Record.

19   Dated: May 21, 2013          s/Terry W. Ahearn
20                                _____
                                 Terrence P. McMahon
21                               Terry W. Ahearn
                                 McDERMOTT WILL & EMERY LLP
22                               275 Middlefield Road, Suite 100
                                 Menlo Park, CA 94025
23                               Telephone: (650) 815-7400
                                 Facsimile: (650) 815-7401
24                               tmcmahon@mwe.com
                                 tahearn@mwe.com

25                               Sarah Chapin Columbia (admitted *pro hac vice*)
                                 Leigh Martinson (admitted *pro hac vice*)
26                               Hasan Rashid (admitted *pro hac vice*)
                                 McDERMOTT WILL & EMERY LLP
27                               28 State St.
                                 Boston, MA 02109
28

1

Telephone:     (617) 535-4000
Facsimile:     (617) 535-3800
scolumbia@mwe.com
lmartinson@mwe.com

2

3

Counsel for Plaintiff and Counterclaim Defendant
SAGE ELECTROCHROMICS, INC.

4

5

6   Dated: May 21, 2013        s/Keith Slenkovich

Keith Slenkovich
Joseph F. Haag
Russell Tonkovich
Toby Mock
Crystal Roberts
WILMER CUTLER PICKERING HALE AND DORR
LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel:  650.858.6000
Fax:  650.858.6100
Keith.Slenkovich@wilmerhale.com
Joseph.Haag@wilmerhale.com
Russell.Tonkovich@wilmerhale.com
Tobias.Mock@wilmerhale.com
Crystal.Roberts@wilmerhale.com

7

8

9

10

11

12

13

14

15

16

17

William F. Lee (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR
LLP
60 State Street
Boston, MA 02109
Tel: 617.526.6000
Fax: 617.526.5000
William.Lee@wilmerhale.com

18

19

20

21

22

Counsel for Defendant-Counterclaimant
VIEW, INC.

23

24

25

26

27

28

Stipulated Document Production Protocol  -21-                    Case No. C 12-06441 (JST)

1

2          **IT IS ORDERED** that the forgoing Agreement is approved.

3  Dated:
                              _____
4                                  UNITED STATES DISTRICT COURT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SIGNATURE OF ATTESTATION**

Pursuant to Civil L.R. 5.1(i)(3), I hereby attest that I have obtained the concurrence in the filing of this document from all the signatories for whom a signature is indicated by a "conformed" signature (/s/) within this e-filed document and I have on file records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request.


Dated:  May 21, 2013                           /s/ Terry W. Ahearn

                                            Terry W. Ahearn


DM_US 42304811-14.092184.0011

Stipulated Document Production Protocol  -23-                    Case No. C 12-06441 (JST)