UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAGE ELECTROCHROMICS INC, | No. C-12-06441 JST (DMR) |
| Plaintiff, | **ORDER ON PARTIES' JOINT DISCOVERY LETTERS [DOCKET NOS. 66 AND 72]** |
| v. | |
| VIEW INC, | |
| Defendant. | |

Plaintiff SAGE Electrochromics, Inc. ("SAGE") and Defendant View, Inc. ("View") filed joint discovery letters regarding View's motions to strike SAGE's infringement contentions and to stay further discovery, [Docket No. 66 (Mot. to Strike)], and SAGE's motion to compel further discovery responses, [Docket No. 72 (Mot. to Compel)]. The court conducted a hearing on September 4, 2013. For the following reasons, the court DENIES View's motion to strike and to stay discovery, and GRANTS SAGE's motion to compel the production of View product samples.

**I. Background**

SAGE filed the present action on December 20, 2012, alleging that View's dynamic glass product infringes various claims of SAGE's U.S. Patent Nos. 7,372,610 ("the '610 patent") and 5,724,177 ("the '177 patent"), both entitled "Electrochromic Devices and Methods." SAGE develops "dynamic glass," sometimes referred to as "electrochromic glass," which can change from a clear state to a tinted state upon the application of an electric charge to the glass. (Compl. ¶ 13.)

1    Pursuant to Patent Local Rule 3-1, SAGE served its infringement contentions ("ICs") and a
2 chart setting out the claims of the patents that it contends View's products infringe. SAGE does not
3 have samples of View's products, and it is undisputed that SAGE has not reverse engineered any of
4 View's products. (Mot. to Strike 7.) Instead, SAGE's claim chart is based on publicly available
5 information about View's products; specifically, information on View's website, three third-party
6 publications, and one of View's patents. (Mot. to Strike Ex. 1.)
7    The parties submitted a joint letter in which View moves to strike SAGE's ICs as
8 "irreparably deficient" and to stay infringement-related discovery. (Mot. to Strike 1.) The parties
9 subsequently filed a second joint letter in which SAGE moves to compel View to produce samples
10 of its products in response to a request for production ("RFP") and to provide a further response to
11 an interrogatory.

## II. Legal Standards

13    The Court's Patent Local Rules aim to "make the parties more efficient, to streamline the
14 litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement
15 claims." *Bender v. Maxim Integrated Prods., Inc.*, No. 09-1152 SI, 2010 WL 1135762, at *2 (N.D.
16 Cal. Mar. 22, 2010) (citation and quotation marks omitted). Specifically, Patent Local Rule 3-1 is a
17 discovery device that sets forth the standards for disclosing asserted claims and infringement
18 contentions. It "takes the place of a series of interrogatories that defendants would likely have
19 propounded had the patent local rules not provided for streamlined discovery." *Intertrust Techs.*
20 *Corp. v. Microsoft Corp.*, No. 01-1640 SBA, 2003 WL 23120174, at *1 (N.D. Cal. Dec. 1, 2003)
21 (citation and quotation marks omitted); *accord Bender v. Freescale Semiconductor, Inc.*, No.
22 09–1156 PJH (MEJ), 2010 WL 1689465, at *2 (N.D. Cal. Apr. 26, 2010). The Rule requires that
23 infringement contentions present "'each claim of each patent in suit that is allegedly infringed by
24 each opposing party' and identify for each asserted claim 'each accused apparatus, product, device,
25 process, method, act or instrumentality ("Accused Instrumentality") . . . of which the party is
26 aware.'" *Bender,* 2010 WL 1689465, at *2 (ellipses in original) (quoting N.D. Cal. Patent L.R.
27 3–1(a), (b)). Pursuant to subsection (c), the infringement contentions also must contain "a 'chart
28 identifying specifically where each limitation of each asserted claim is found within each Accused

2

Instrumentality.'" *Id.* (quoting N.D. Cal. Patent L.R. 3–1(c)); *accord Shared Memory Graphics, LLC v. Apple, Inc.,* No. 10-2475 MMC (JSC), 2011 WL 3878388, at *5 (N.D. Cal. Sept. 2, 2011); *Bender,* 2010 WL 1135762, at *2 (holding that, under Patent Local Rule 3-1(c), plaintiff must "compare an accused product to its patents on a claim by claim, element by element basis for . . . defendant's products") (citation and quotation marks omitted); *Intertrust Techs. Corp.*, 2003 WL 23120174, at *2 (same). Taken together, Patent Local Rule 3-1 mandates that a plaintiff's infringement contentions "must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement" and "to raise a reasonable inference that all accused products infringe." *Shared Memory Graphics, LLC*, 2011 WL 3878388, at *4 (citations and quotation marks omitted); *accord Shared Memory Graphics, LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (citing *Antonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002); *View Eng'g, Inc. v. Robotic Vision Sys.*, *Inc.,* 203 F.3d 981, 986 (Fed. Cir. 2000)).

Patent Local Rule 3-1 does not "require the disclosure of specific evidence [or] require a plaintiff to prove its infringement case." *Creagri, Inc. v. Pinnaclife Inc.*, LLC, No. 11-cv-06635-LHK-PSG, 2012 WL 5389775, at *2 (N.D. Cal. Nov. 2, 2012) (citation and quotation marks omitted). "But to the extent appropriate information is reasonably available to it, a patentee must nevertheless disclose the elements in each accused instrumentality that it contends practices each and every limitation of each asserted claim." *Id*.

### III. Discussion

In its motion to strike, View argues that SAGE's ICs "lack the requisite specificity necessary to put View on notice of SAGE's infringement theories, and fail to make the 'reverse engineering or its equivalent' showing necessary to meet that standard." (Mot. to Strike 2.) Essentially, View's position is that SAGE's ICs are deficient because SAGE did not reverse engineer View's products. SAGE does not deny that it has not subjected View's products to reverse engineering or a similar process, asserting that View's products are not readily available on the market, that it tried and failed to obtain samples from View prior to serving its ICs, and that View continues to refuse to produce samples of its products. Without samples, SAGE argues that it had no choice but to base its ICs on

3

publicly available information about the products, such as View's website, third-party publications, and one of View's patents.

As an initial matter, in arguing that Patent Local Rule 3-1 *requires* reverse engineering, View overstates Rule 3-1's specificity requirement. The Rule requires SAGE to disclose the factual bases of its allegations of infringement "with as much specificity as possible with the information currently available to it." *Creagri*, 2012 WL 5389775, at *3; *accord FusionArc, Inc. v. Solidus Networks, Inc.*, No. C 06-06760 RMW (RS), 2007 WL 1052900, at *3 (denying motion to strike ICs because plaintiff had "provided all of the information in its possession as to how and why" defendant's product infringed and "disclosed, to the extent of its present knowledge, where it believes the infringement lies."). It does not require Plaintiff to reverse engineer every product it has accused, especially where the products are not reasonably available to the public. *See France Telecom, S.A. v. Marvell Semiconductor, Inc.*, No. 12-cv-04967 WHA (NC), 2013 WL 1878912, at * (N.D. Cal. May 3, 2013) (collecting cases; citing *Bender*, 2010 WL 1689465, at *4 (noting that reverse engineering is not a *per se* requirement)). For example, in *France Telecom*, the court found certain ICs sufficient where the plaintiff used industry standards for the relevant technology after the defendant "refused to provide a single chip, specification, or other information from which [the plaintiff] could do a direct comparison to" the alleged infringed patent. 2013 WL 1878912, at *4 (quotation marks omitted); *see also FusionArc*, 2007 WL 1052900, at *2 (holding sufficient under Patent Local Rule 3-1 ICs based on marketing materials).

The parties dispute whether SAGE had reasonable access to View's products in order to reverse engineer them prior to serving its ICs. At the hearing, SAGE described its unsuccessful efforts to obtain samples of View's allegedly infringing products. As View conceded, View's products are custom-made and not available for purchase in store or online. SAGE believed that a purchase in its own name from View, its competitor, was not realistic, which was borne out when View denied SAGE permission to purchase its products after it filed suit. Due to its parent company's corporate ethics policies, SAGE was prohibited from purchasing View's products under the name of another entity or individual. View produces samples of its products for trade shows, but the samples are subject to non-disclosure agreements and are not otherwise available. SAGE hired a

private investigator to try to obtain discarded samples of View's products from its waste disposal facility, but the facility was secured and the investigator was unable to do so. SAGE also represented that it began requesting samples from View in February 2013, shortly after filing its complaint, but that View repeatedly has refused to provide samples.

View disputes the sufficiency of SAGE's efforts to obtain samples of its products, but did not identify any realistic alternatives that SAGE could have pursued. Instead, View argues that SAGE should have followed the specific procedure it claims the Federal Circuit endorsed in *Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359 (Fed. Cir. 2000). According to View, *Hoffmann-La Roche* stands for the proposition that where a party suspects infringement but is unable to obtain a sample of an alleged infringing product despite diligent efforts, the party should send a letter to the alleged infringer explaining the bases for its belief that there has been infringement before filing suit. The parties may then enter a non-disclosure agreement to share confidential information about products and processes, which gives the alleged infringer an opportunity to explain why its product does not infringe. According to View, this process gives the parties a chance to avoid the burden of litigating a meritless patent infringement suit and presents the opportunity for the alleged infringer to file a declaratory judgment action before an infringement suit is filed. View argues that SAGE should have attempted to resolve its infringement allegations via a "*Hoffmann-La Roche* letter" before filing suit, rather than filing its complaint without first obtaining samples of View's products.

View's reading of *Hoffman-LaRoche* is unsupported and not persuasive. First, the issue before the court in *Hoffmann-La Roche* was not the adequacy of infringement contentions or discovery responses; it was a Federal Rule of Civil Procedure 11 sanctions motion asserting that an infringement action was baseless and brought in bad faith. *Id*. at 1362. View's motion to strike veers closely to making a Rule 11 argument about the adequacy of SAGEs pre-suit investigation, (*see, e.g.*, Mot. to Strike 4 (asserting Plaintiff "has no factual basis to assert" any claims of the '610 patent)), and the court notes that the merits of such an argument are not properly before the court at the discovery stage of the proceedings. *See Network Caching Tech., LLC v. Novell Inc.*, No. C-01-2079 VRW, 2003 WL 21699799, at *7 (N.D. Cal. Mar. 21, 2003) (holding that a court cannot determine whether a filing was baseless for purposes of Rule 11 at pleading stage without further

proceedings, such as claim construction or summary judgment hearing). Patent Local Rule 3-1 is designed to compel a plaintiff to crystallize its theory of infringement; it is not "a mechanism for resolving the *merits* of the parties' dispute." *FusionArc*, 2007 WL 1052900, at *2 (emphasis in original). As the court in *FusionArc* noted, "a plaintiff may satisfy its obligations under [Patent Local] Rule 3-1 whether or not it conducted [a] pre-filing investigation sufficient to comply with Rule 11." 2007 WL 1052900, at *2.

Moreover, *Hoffmann-La Roche* did not hold that a party that suspects infringement but is unable to obtain a competitor's product must attempt to enter into a non-disclosure agreement to exchange confidential information prior to filing suit. In fact, the parties in *Hoffmann-La Roche* discussed and entered into a non-disclosure agreement *after* the plaintiffs filed suit, not before. *Hoffmann-La Roche*, 213 F.3d at 1362. The *Hoffmann-LaRoche* court simply affirmed the district court's conclusion that the plaintiffs' pre-filing inquiry was reasonable for purposes of satisfying Rule 11, and rejected the defendant's position that because the plaintiffs "were unable to obtain and set forth in their complaint facts showing infringement, they should not have filed suit at all." *Id*. at 1363-64.

In sum, the court concludes that View's products were not readily available to SAGE. Therefore, as SAGE's preparation of its ICs was restricted by the fact that it did not have reasonable access to View's products, SAGE appropriately relied on the information known to it through publicly available materials in formulating its ICs.

View also argues that the ICs are insufficiently specific to put it on notice of SAGE's infringement theories, complaining that they rely exclusively on the specification of View's patent without identifying the corresponding structures in View's products. The level of detail and specificity of SAGE's ICs would certainly benefit from an examination of View's products, as SAGE admits. However, upon review of SAGE's ICs and accompanying charts, the court concludes that at this point, SAGE has disclosed its theories of infringement at a level of specificity that matches the information currently available to it. SAGE has adequately put View on notice of its theories of infringement. As "[d]isclosure of the factual bases of its allegations is all that is required

at this stage," *Creagri*, 2012 WL 5389775, at *3, the court finds SAGE's ICs sufficient to satisfy Patent Local Rule 3-1. Therefore, View's motions to strike and to stay discovery is DENIED.

With respect to SAGE's motion to compel, SAGE argues that View has failed to provide certain discovery pending the court's ruling on the motion to strike. Specifically, SAGE moves to compel View to provide product samples in response to its RFP and to provide a further response to Interrogatory No. 7. With respect to the production of product samples, View took the position that it would be "potentially senseless" to engage in such discovery where it could be rendered moot pending the court's decision on its motions to strike and to stay discovery. (Mot. to Compel 4.) Without ruling on whether View was justified in tying its discovery obligations to the outcome of its motion to strike, the court grants SAGE's motion to compel production of View's samples. The parties indicated their willingness to exchange product samples. The court ordered the parties to meet and confer after the hearing regarding the scope and timeline for exchange of product samples. Regarding Interrogatory No. 7, View supplemented its response after the parties filed their joint letter but SAGE asserted at the hearing that its response is inadequate. Since the parties have not met and conferred about the supplemental response, this matter is not ripe for decision.

## IV. Conclusion

For the above reasons, View's motions to strike and to stay discovery are DENIED. SAGE's motion to compel production of product samples is GRANTED, subject to further meet and confer regarding scope and time of delivery.

IT IS SO ORDERED.

Dated: September 6, 2013




DONNA M. RYU
United States Magistrate Judge