# Exhibit D

2005 WL 6220089 (N.D.Cal.), 2005 Markman 6220089
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

LEXTRON SYSTEMS, INC, Plaintiff,
v.
MICROSOFT CORP, Defendant.

No. C–04–0588 VRW.
June 1, 2005.

Jon M. Wilson, Richard J. Warburg, Foley & Larnder, San Diego, CA, Joseph W. Beatty, Foley & Lardner, San Francisco, CA, for Plaintiff.

David T. Pritikin, Richard A. Cederoth, Sidley Austin Brown & Wood LLP, Chicago, IL, Mark E. Haddad, Sidley Austin Brown & Wood, Los Angeles, CA, Theodore Whitley Chandler, Sidley Austin LLP, San Francisco, CA, for Defendant.

ORDER

VAUGHN R. WALKER, Chief Judge.

**\*1** The patent-in-suit in this infringement action is United Stats Patent No 5,794,259, which discloses an "apparatus and methods to enhance web browsing on the internet." The invention is in the field of web browser technology, and, more particularly, "tools for filling in forms" on web pages. Patent at 1:5–8. The court held a claim construction hearing on May 25, 2005, pursuant to *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Based on the hearing, the parties' memoranda and the applicable Federal Circuit law, the court construes the claims of the patent as follows.

I

The patent itself concisely explains its purpose and background:

> Often when browsing the [web], one encounters forms to fill out, mostly for buying or subscribing to services or products. these forms are often long, asking for lots of information, and tedious to fill out.

\* \* \*

> What is needed \* \* \* is a system that allows a user to link specific pre-stored data, usually data unique to the user, with fields in forms encountered on the Internet, such that a pipeline is established for quickly and efficiently filling fields in forms.

Patent at 1:13–16, 45–50.

The patent describes such a system involving four types of entities: fields, field names, stored fill entities and tags. Although the court will have occasion below to construe some of these terms more precisely, a rough description of these four entities and how they interact will serve to frame the context of the patent. "Fields" are the familiar blank spaces to be filled in on web pages. Each field has a "field name"; this field name is internal to the web page code and is not seen by the user. A field name is different from a "field label," which is typically text visible to the user that is placed near the field to identify the purpose of the field to the user. "Stored fill entities" are pieces of text or data that have been stored on the computer with a view toward entering them in a field on a web page. Each stored fill entity is identified in the computer by a "tag" that

describes the content of the stored fill entity. When a form is encountered in browsing the web and the system described by the patent is activated, the system compares the field names with the tags, and if a match is found, it associates the stored fill entity having the matching tag with the field having the matching field name. By way of a concrete example, consider a field for a user to enter his surname. The field name for the field might be "LastName ." If the user, Mr. Jones, has created a stored fill entity "Jones" with the tag "LastName," then the system can automatically associate "Jones" with the surname field on the form.

What it means for a tag and a field name to "match" and what it means to "associate" a stored fill entity with a field are matters the parties hotly dispute. To these questions, and the construction of other terms of the patent, the court now turns.

## II

**\*2** The construction of patent claims is a question of law to be determined by the court. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The goal of claim construction is "to interpret what the patentee meant by a particular term or phrase in a claim." *Renishaw PLC v. Marposs SpA,* 158 F.3d 1243, 1249 (Fed.Cir.1998). In determining what a patentee meant by a term or phrase, the court looks first to the claim itself.

> The claims of the patent provide the concise formal definition of the invention. They are the numbered paragraphs which "particularly [point] out and distinctly [claim] the subject matter which the applicant regards as his invention." 35 USC § 112. It is to these wordings that one must look to determine whether there has been infringement. Courts can neither broaden nor narrow the claims to give the patentee something different than what he has set forth. No matter how great the temptations of fairness or policy making, courts do not rework claims. They only interpret them.

*EI Du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1433 (Fed.Cir.1988).

"The claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim." *Renishaw,* 158 F.3d at 1248. "The words used in the claim are viewed through the viewing glass of a person skilled in the art." *Brookhill–Wilk 1, LLC v. Intuitive Surgical, Inc.,* 326 F.3d 1215, 1220 (Fed.Cir.2003) (citing *Tegal Corp. v. Tokyo Electron Am., Inc.,* 257 F.3d 1331, 1342 (Fed.Cir.2001)). "Absent a special and particular definition created by the patent applicant, terms in a claim are to be given their ordinary and accustomed meaning." *York Prods., Inc. v. Central Tractor Farm & Family Ctr.,* 99 F.3d 1568, 1572 (Fed.Cir.1996). The court may, if necessary, consult a variety of sources to determine the ordinary and customary meaning of a claim term, including the claim terms themselves, dictionaries, the written description, the drawings and the prosecution history, if in evidence. *Brookhill–Wilk 1,* 326 F.3d at 1220. "Such intrinsic evidence is the most significant source of legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). With respect to dictionary definitions, "[i]f more than one dictionary definition is consistent with the use of the words in the intrinsic record, the claim terms may be construed to encompass all such consistent meanings." *Texas Digital Systems, Inc. v. Telegenix, Inc.,* 308 F.3d 1193, 1203 (Fed.Cir.2002).

The court begins its construction of claim terms by consulting intrinsic evidence of the meaning of disputed claim terms, which includes the claims, the specification and the prosecution history (if in evidence). *Lacks Industries, Inc. v. McKechnie Vehicle Components USA, Inc.,* 322 F.3d 1335, 1341 (Fed.Cir.2003) (citation omitted). "If upon examination of this intrinsic evidence the meaning of the claim language is sufficiently clear, resort to 'extrinsic' evidence, such as treatises and technical references, as well as expert testimony when appropriate, should not be necessary." *Digital Biometrics, Inc., v. Identix, Inc.,* 149 F.3d 1335, 1344 (Fed.Cir.1998). "[I]f after consideration of the intrinsic evidence, there remains doubt as to the exact meaning of the claim terms, consideration of extrinsic evidence may be necessary to determine the proper construction." *Id.*

**\*3** "[A] court may constrict the ordinary meaning of a claim term in * * * one of four ways[:]" (1) "if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim in either the

specification or prosecution history;" (2) if the intrinsic evidence shows that the patentee distinguished the term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention; (3) "if the term chosen by the patentee so deprives the claim of clarity as to require resort to other intrinsic evidence for a definite meaning; and (4) "if the patentee phrased the claim in step- or means-plus-function format," then "a claim term will cover nothing more than the corresponding structure or step disclosed in the specification, as well as equivalents thereto * * *." *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366–67 (Fed.Cir.2002) (internal citations and quotation marks omitted).

Limitations from the specification, such as from the preferred embodiment, cannot be read into the claims absent an express intention to do so. *Teleflex, Inc. v. Ficosa North Am. Corp.,* 299 F.3d 1313, 1326 (Fed.Cir.2002) ("The claims must be read in view of the specification, but limitations from the specification are not to be read into the claims."). But "a construction that excludes a preferred embodiment 'is rarely, if ever, correct.' " *C R Bard, Inc. v. United States Surgical Corp.,* 388 F.3d 858, 865 (Fed.Cir.2004) (citing *Vitronics,* 90 F.3d at 1583).

With these legal principles in mind, the court now turns to the construction of the disputed claim language of the patent.

### III

Independent claims 1 and 4 are at issue. The disputed terms in these claims overlap significantly. Accordingly, except where noted, the court construes like terms in the same manner. As much of the claim language is in dispute, the court simply rescribes the claims here and will identify the precise terms in dispute as it construes them in turn.

> 1. A system for providing data for fields having coded field names in forms downloaded as code from a server on the Internet, comprising:
>
> a central processing unit (CPU);
>
> a display operable by the CPU;
>
> stored fill entities associated with tags accessible by the CPU; and
>
> control code executable by the CPU;
>
> wherein the CPU, executing the control code, compares the coded field names in the downloaded code with the tags associated with the stored fill entities, retrieves fill entities when a match is made, and associates retrieved fill entities with fields wherein the tags match the field names, preparatory to transmission to the server on the Internet.

* * *

> 4. A method incorporating a computer having a display screen, the method for providing data for forms having fields with coded field names downloaded as code from a server on the Internet comprising steps of:
>
> ***4** (a) associating fill entities with tags;
>
> (b) storing the fill entities associated with the tags in a memory of the computer;
>
> (c) downloading a form as code from a server on the Internet through a browser using the computer;
>
> (d) associating the tags of the stored fill entities with coded field names in the code of the downloaded

form; and

(e) causing the stored fill entities with tags matching coded field names in the code of the downloaded form to be associated with the coded fields to which the tags match.

Patent at 5:11–6:31.

## A

Before turning to the actual claim language, a comment on the structure of claim 1 is in order. Although the bulk of the claim describes steps, the claimed subject matter is a "system." But this claim is neither a method claim nor a means-plus-function claim. Rather it is an apparatus—a "machine" under 35 USC § 101—specifically, a computer system.

Claim 1 is not a method claim, most obviously because it does not use the word "method." Furthermore, claim 1 describes a "system" that "compris[es]" several structural components (viz, a CPU, a display, "stored fill entities associated with tags" and "control code"). The stepwise functional language of claim 1 ("wherein the CPU * * * compares * * *, retrieves * * *, and associates * * * ") is simply a limitation, and functional limitations are a proper way of limiting apparatus claims. See, e.g ., *K–2 Corp. v. Saloman SA,* 191 F.3d 1356, 1363 (Fed.Cir.1999).

Nor is claim 1 drafted in means-plus-function form pursuant to 35 USC § 112, ¶ 6. True, claim 1 is "a system for providing," and "system" can be a synonym for "means." Nonetheless,

> "a claim term that does not use 'means' will trigger the rebuttable presumption that § 112 ¶ 6 does not apply." *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1369 (Fed.Cir.2002). The use of the term "means" is "central to the analysis," *Personalized Media Communications, LLC v. Int'l Trade Comm'n,* 161 F.3d 696, 703 (Fed.Cir.1998), because the term "means," particularly as used in the phrase "means for," is "part of the classic template for functional claim elements," *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1427 (Fed.Cir.1997), and has come to be closely associated with means-plus-function claiming. See *Apex, Inc. v. Raritan Computer, Inc.,* 325 F.3d 1364, 1373 (Fed.Cir.2003); *York Prods., Inc. v. Cent. Tractor Farm & Family Ctr.,* 99 F.3d 1568, 1574 (Fed.Cir.1996).
>
> The presumption that a limitation lacking the term "means" is not subject to section 112 ¶ 6 can be overcome if it is demonstrated that "the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.' " *CCS Fitness,* 288 F.3d at 1369 (quoting *Watts v. XL Sys., Inc.,* 232 F.3d 877, 880 (Fed.Cir.2000)). Our cases make clear, however, that the presumption flowing from the absence of the term "means" is a strong one that is not readily overcome. See, e.g., *Al–Site Corp. v. VSI Int'l, Inc.,* 174 F.3d 1308, 1318–19 (Fed.Cir.1999); *Personalized Media Communications,* 161 F.3d at 703–05.

**\*5** *Lighting World, Inc. v. Birchwood Lighting, Inc.,* 382 F.3d 1354, 1358 (Fed.Cir.2004).

Claim 1 recites sufficient structure to remove the possibility that "system" is actually "means" in disguise. As noted above, claim 1 describes a CPU, a display, control code and more. The presumption against reading claim 1 under § 112, ¶ 6 remains unrebutted.

Accordingly, the court regards claim 1 as an apparatus claim.

## B

Turning to specific aspects of the claim language, the court will construe disputed terms in the order in which they appear in the claims.

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works.

**"*providing data*"**
Defendant contends that "providing data" means that the system places data in fields on a form; plaintiff offers the more expansive construction of "making data available." Plaintiff's construction appears to accord with the dictionary definition of "provide." By contrast, defendant offers several reasons for its construction, none of which persuades.

First, defendant offers a lengthy logical chain beginning with step (d) of claim 4:

   1. Step (d) associates fill entities with fields by virtue of the association between tags and field names.

   2. Step (e) must require something more than step (d).

   3. Hence, "associates" in step (e) must refer to something more than "associates" in step (d).

   4. "Associates" in step (e) must mean "places retrieved fill entities into fields."

   5. Step (e) is a step of claim 4.

   6. Hence, claim 4 includes placing retrieved fill entities into field.

   7. Hence "providing" in the preamble of claim 4 must mean "placing data into fields on a form."

   8. "Providing" in claim 1 must have the same meaning as "providing in claim 4.

   9. Hence, "providing" in claim 1 must mean "placing data in fields on a form."

There are several steps in this chain with which plaintiff takes issue. But for present purposes, it suffices to note that the inferential chain fails at the very first step: Stripped to its grammatical bones, step (d) describes associating "tags * * * with coded field names." Step (e) describes associating "stored fill entities * * * with * * * coded fields." Step (d) may imply to a human being that an association between a tag and a field name implies an association between the corresponding stored fill entity and field. But the patent is directed at computer processing, and a computer would necessarily need separate instructions to achieve both step (d) and step (e).

Second, defendant agues that plaintiff's proposed construction would render the claim "hopelessly indefinite" and invalid under 35 USC § 112, ¶ 2. Although "where there is an equal choice between a broader and a narrower meaning of a claim," and the narrower meaning will save the claim from invalidity, the narrower construction is preferred, see *Athletic Alternatives v. Prince Manufacturing, Inc.,* 73 F.3d 1573, 1581 (Fed.Cir.1996), there is no "equal choice" here. Rather, the usual principle of claim construction applies: Courts are not to ignore the plain meaning of claim language in an attempt to save the claim from invalidity. See, e.g, *EI Du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1433 (Fed.Cir.1988).

**\*6** Third, defendant argues that "the specification considered filling in forms *to be* the invention. * * * The fact that the text of the patent consistently refers to 'the invention' as a system that fills in fields 'suggests that the very character of the invention requires the limitation be a part of every embodiment' because nothing else is disclosed." Def Br (Doc # 64) at 12:23, 13:14–16 (quoting *Alloc, Inc. v. ITC,* 342 F.3d 1361, 1370 (Fed.Cir.2003)). But the "very character of the invention" is not actual filling of fields, but rather the automation of part of that task. Filling in fields is merely a limitation in a preferred embodiment disclosed in the specification. As such, defendant's argument appears to run afoul of the principle that "limitations from the specification, such as from the preferred embodiment, cannot be read into the claims absent an express intention to do so." *Teleflex,* 299 F.3d at 1326.

Moreover, the specification contemplates "activat[ing]" a "bubble" with possible choices for stored fill entities. See Patent at 4:15–25 & fig 2. Claim 2, which more specifically claims such a bubble-based system, speaks of "fill [ing] the field," while there is no mention of field-filling in claim 1.

Finally, defendant argues that the patent prosecution history establishes that "providing" is limited to filling in fields. It is true that claim 1 originally referred to a "system for filling fields" and was amended to describe a "system for providing data for fields." See Def Br (Doc # 64) Ex K (amendment). And it is also true that, even after amendment, the patentee referred to the invention as one for filling in forms. See, e.g., *id.* at 6 (referring to "automated filling of forms as taught in Applicant's invention"). The issue is close. On the one hand, the file history supports defendant's position because it discusses the invention in terms of filling in fields. On the other hand, the amendment to the actual claim language squarely supports plaintiff's position. Indeed, to accept defendant's position would require the court to read the amendment out of the claim, something the court cannot do. "[T]he claim construction inquiry * * * begins and ends in all cases with the actual words of the claim." *Renishaw,* 158 F.3d at 1248.

Accordingly, the court construes "providing data" as "making data available."

**"*coded field names*"**
Defendant contends simply that the coded field names are the names of the fields. Plaintiff would provide that the coded field names are "the names assigned to empty fields in (normally hidden) markup language instructions (used to program a form) that are used by the computer to keep track of data entered into the fields." Plaintiff devotes considerable attention to arguing that the field names (identifiers internal to the computer) are different from the field labels (identifiers visible to the user), but defendant does not dispute this. See, e.g, Def Br (Doc # 64) at 18:8–9, 17–19 ("Lextron and Microsoft generally agree that 'coded field names' * * * are the names in the code that the computer uses to access the data in the fields * * *. Field labels are the visible text that identifies a field to a user on the screen. Field labels are optional, field names are not (the computer needs the field name to access the data in the field).").

**\*7** The parties' dispute centers not on the basic meaning of "coded field names," but rather on whether plaintiff's additional limitations are appropriate. Defendant posits that plaintiff seeks to limit its claims to HTML (hypertext markup language, the standard language for web pages) "through the back door" with these limitations. *Id.* at 17:7–8. Plaintiff may not disagree that its constructions limit the claims to HTML; in fact, it contends that just such a limitation is appropriate in light of (1) the patent title's reference to "Web Browsing on the Internet"; (2) the field-of-invention reference to "the field of Internet World Wide Web (WWW) browser technology"; (3) the references to web pages in the specification; and (4) claim 4's reference to a "browser."

The trouble with plaintiff's argument is that it looks everywhere but the language of the claims themselves. There is nothing about "coded field names" that requires a limitation to a particular code language. The patentee certainly might have added such a limitation, but it does not appear in the claims as written. Charitably read, plaintiff's references to the specification could be an invocation of the principle that the patentee may act as his own lexicographer by defining claim terms in the specification. But even this argument would be unavailing: The term "coded field names" does not appear anywhere outside of the claims, and "field names" is used repeatedly throughout the specification without explicit definition.

That said, plaintiff points out that the prosecution history reflects an amendment that added "coded" before "field names" to overcome a rejection of the claim as unpatentable over United States Patent No 5,450,537 ("Hirai"). Hirai also teaches a method and apparatus for filling in forms—such as paper forms scanned into a computer—but operates based on the text labels of fields, not an encoded field name. To overcome Hirai, the patentee here added "coded." See Pl. Br. (Doc # 43) Ex G at 9 (amendment). As such, the court's construction must reflect this limitation. Defendant's proposed construction "the names of the fields" gives no content to "coded." Plaintiff's proposed construction can be used in part to give content to "coded" by explaining that the names are "in computer language."

Accordingly, the court construes "coded field names" as "the names of the fields in computer language."

***"downloaded"***
The parties seem to dispute the construction of this term: Plaintiff proposes "obtained" and defendant proposes "received." The court sees no need to construe a term that has entered the popular lexicon.

Accordingly, the court declines to construe this term.

***"code"***
The dispute over this term is largely resolved by the court's construction of "coded field names": Plaintiff advocates here, as it did with "coded field names," that the term should be limited to a markup language (such as, but not limited to, HTML). The court has rejected this contention. Defendant's construction—"representation of information"—is not satisfactory, as it strikes the court as unhelpfully vague and possibly misleading. In any event, "code" may be sufficiently familiar (or immaterial) as to require no construction.

**\*8** Accordingly, the court declines to construe "code" at this time. The parties may apply to the court for a construction if it becomes necessary.

***"Internet"***
Plaintiff proposes to construe "Internet" as "the world wide web." Although the patent's specification and title all suggest that the invention is intended to apply to the world wide web, there are at least two reasons to reject this construction. First, it is well known that the world wide web exists by virtue of servers connected to ("on") the Internet. Thus, the claim language of "server on the Internet" is not at all inconsistent with plaintiff's proposed construction. Second, "Internet" is capitalized in the claim language, suggesting the proper noun; whatever "internet" might mean, there is only one "Internet." (It is because of this capitalization that defendant's proposed common-noun construction—"an inter-network of networks"—is obviously incorrect.) In any event, the court is confident that, like "download," "Internet" has entered the popular lexicon and needs no construction.

Accordingly, the court declines to construe "Internet."

***"stored fill entities"***
Insisting that the invention is directed toward filling form fields, defendant proposes to construe this term as "stored data to be placed in a form field." The court has rejected this limitation. Plaintiff proposes to construe this term as "stored data filled into fields in forms so that it is available for later use." This construction appears to imply that the stored fill entities are created in the first instance by (manual) completion of the fields in a form. (Plaintiff elaborated at the hearing that the manually filled-in forms would be forms from the Internet.) The court must reject this construction as well.

Plaintiff's first argument in support of its construction is that step (b) of claim 4—"storing the fill entities associated with the tags in a memory of the computer"—"clearly refers to data that has been filled into a blank field in a form, and thus it follows that the term 'stored fill entities' refers to such data after it has been stored in a memory for later use." Pl Br (Doc # 43) at 17:1–3. The court is bewildered by this assertion; step (b) says nothing about *where* the data comes from; step (b) describes only *what is done* with the data.

Plaintiff's second argument is equally unavailing. The specification provides that the invention described is "such that a pipeline is established for quickly and efficiently filling fields in forms." Patent at 1:49–50. Plaintiff argues that "[t]he reference to 'pipeline' plainly conveys the idea that the data the user has entered into fields in earlier forms is made available for use in filling fields in later forms." Pl Br (Doc # 43) at 17:18–20. Whatever "pipeline" means, it certainly does not "plainly" say anything about the existence of some otherwise-unmentioned previously filled-in form. Previously filled-in forms may be a suitable source of the stored fill

entities, but the patent in no way limits the source of the stored fill entities in such a way; indeed, the claims place no limitation whatever on the source of the stored fill entities.

**\*9** A minimal construction can be salvaged from plaintiff's proposal: "The plain wording of the claim language indicates that 'stored fill entities' are 'fill entities' that have been stored in a memory of the computer for later use." Pl Br (Doc # 43) at 16:21–22. The court agrees.

Accordingly, the court construes "stored fill entities" as "fill entities that have been stored in a memory of the computer for later use."

"*associated with* "
This is the first instance of "associate," a word that is used in one form or another three times in claim 1 and four times in claim 4. Defendant argues that "associate" is used in different senses in these seven different contexts, and as such requires several different constructions. Plaintiff proposes that "associated" means "related to" throughout the patent. This is the most appropriate sense of the verb "associate" found in plaintiff's dictionary reference. See Pl. Br. (Doc # 43) Ex F (*Webster's Unabridged Dictionary* ) at 126 (defining "associate" as "to connect or bring into relation"). While "related to" is hardly an illuminating construction, that failing is more the product of the patentee's repeated use of the vague and flexible (and perhaps even indefinite) term "associate" than it is any failure on plaintiff's part to propose a clean construction.

Defendant faces an uphill battle in challenging the patentee's presumably intentional use of "associate" throughout the claims:

> "[T]he same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." *Fin Control System Pty, Ltd. v. OAM, Inc.,* 265 F.3d 1311, 1318 (Fed.Cir.2001). If possible, th[e] court construes claim terms "in a manner that renders the patent internally consistent." *Budde v. Harley–Davidson, Inc.,* 250 F.3d 1369, 1379–80 (Fed.Cir.2001).

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford International, Inc.,* 389 F.3d 1370, 1377 (Fed.Cir.2004). Though there may be no danger here of internal inconsistency from differential constructions of "associate," neither is there any warrant in the intrinsic record for such differential constructions.

Several of defendant's differential constructions of "associate" appear to depend entirely on its contention that the claims require filling in the fields in the form. See Def Br (Doc # 64) at 30:18–31:3 (arguing that "associates" at the end of claim 1 must mean "placing the data into the fields" because the claim requires "placing the fill entity in the field"); *id.* at 32:3–7 (same). The court has rejected defendant's premise; the claims do not require placing the data into the fields, and there is no basis to limit "associates" by holding that "associates retrieved fill entities with fields" means no more than "places retrieved fill entities in fields." Indeed, the patentee amended claim 1 to change "*places* fill entities *in* fields" to "*associates* retrieved fill entities *with* fields." See Def Br (Doc # 64) Ex K (amendment) at 2. In short, defendant cannot point to evidence to overcome the presumption that the patentee has used "associate" in the same (albeit vague) sense throughout the claims.

**\*10** Accordingly, unilluminating as it may be, the court construes "associated with" to mean "related to."

"*tags* "
A "tag" is an "identifier"; on this much the parties agree. Defendant proposes "an identifier, such as an alphanumeric field name, that identifies the fill entity." Plaintiff proposes "an automatically generated identifier that is distinct from the field name and is used for matching against coded field names." Plaintiff's principal objection is that the example offered in defendant's proposed construction—"such as an alphanumeric field

name"—is confusing in light of the usage of the claim term "field name" elsewhere in the patent. The court agrees with plaintiff in this respect, but otherwise adopts defendant's proposed construction.

There are three further qualifications introduced by plaintiff's proposed construction, each of which the court cannot accept. First, plaintiff proposes a limitation that the tag be "automatically generated." While as a practical matter, it may be true that the computer (not the user) generates the tag, there is no support for this in the claim or the specification. The court declines to introduce such an unclaimed limitation. Second, plaintiff reiterates that the tag is "distinct from the field name." There is no need for this qualifier; it is clear from the claim itself that tags and field names are different things. Third, plaintiff would specify that the tag "is used for matching against coded field names." This usage (or something akin to this usage) is described elsewhere in the claim; the term "tag" itself does not carry this meaning.

Accordingly, the court construes "tag" as "an identifier that identifies the fill entity."

*sequencing in the last part of claim 1*
Defendants assert that the events described in the "wherein" clause of claim 1 must occur in the sequence recited in the claim. Plaintiff contends that no specific order is required. Although claim 1 is not strictly a method claim, it recites steps, so Federal Circuit precedent on methods is appropriately invoked here:

> "Unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one. However, such a result can ensue when the method steps implicitly require that they be performed in the order written."

*Altris, Inc. v. Symantec Corp.,* 318 F.3d 1363, 1369 (Fed.Cir.2003) (quoting *Interactive Gift Express, Inc. v. Compuserve Inc.,* 256 F.3d 1323, 1342–43 (Fed.Cir.2001)).

The grammar of the steps here requires that they be performed in the sequence written. It is helpful to rescribe the relevant portion of claim 1, with the steps enumerated:

> wherein the CPU, executing the control code,
>
>> [1] compares the coded field names in the downloaded code with the tags associated with the stored fill entities,
>>
>> [2] retrieves fill entities when a match is made, and
>>
>> [3] associates retrieved fill entities with fields wherein the tags match the field names,
>
> **\*11** preparatory to transmission to the server on the Internet.

Patent at 5:19–25.

Step [2] contains an adverb "when" that implies some temporal sequence; in particular, step [2] occurs only when (i e, after) a "match is made." Step [1], which involves "compar[ing]" is the only step that can be understood to produce a "match." Hence, step [1] must occur before step [2].

Step [3] uses the past participle "retrieved" as an adjective modifying "fill entities." The use of the past participle implies that some action—here, retrieving—has already taken place. Step [2] supplies that past action. Hence, step [2] must occur before step [3].

In sum, the three steps must occur in the sequence written. Plaintiff's principal objection is that the steps could proceed in a different order in forms having multiple fields:

> For example, in a form having two fields named "first name" and "last name," the

> "compares" step could be performed for the "first name" field, followed by the "retrieves" and the "associates" steps. Next, the "compares" step could be performed for the "last name" field, followed by the "retrieves" and the "associates" steps.

Pl Br (Doc # 43) at 33:23–26. The court sees plaintiff's hypothetical as a case of an embodiment that practices the invention multiple times simultaneously or sequentially, not a case of out-of-order execution of the recited steps. Even in plaintiff's hypothetical, with respect to each practicing of the invention—comparing, retrieving and associating for the "first name" field, and then doing so for the "last name" field—the steps are taken in the order recited in the claim.

Accordingly, the court concludes that the steps of the "wherein" clause of claim 1 must occur in the sequence recited in the claim.

#### *"compares"*

The proper construction of "compares" is bound up with the proper construction of "match" because the logic of the steps in claim 1 implies that the product of the "comparing" step is a "match." Rather than separately construe these terms, the court finds it more sensible to construe "compares" in terms of "matches" and then to construe "matches" (see below). Plaintiff offers an unobjectionable construction of "compares" that fits this scheme: "compares" means "looks for potential matches."

Accordingly, the court construes "compares" as "looks for potential matches."

#### *"the coded field names in the downloaded code with the tags" (claim 1) and "the tags of the stored fill entities with coded field names in the code of the downloaded form" (claim 4)*

In these two terms, the parties dispute whether the "comparing" (or in claim 4 "associating") step must be performed with respect to *all* field names of the form. Plaintiff contends that there is no basis in the claim language for a limitation of "all field names" or "every field name" or "each field name." In support, plaintiff cites *Dayco Products, Inc. v. Total Containment, Inc.,* 258 F.3d 1317, 1325, 1327–28 (Fed.Cir.2001), which holds that "plurality" (as in "a plurality of objects") means "two or more ." Defendant argues that the use of the plural implies that all field names must be processed (even if not all field names are ultimately matched with a tag).

**\*12** *Dayco* is not on point. In one respect, Dayco only resolves a question of definition ("what does 'plurality' mean?"), but the question here posed is one of syntax ("what does the use of a plural noun signify?"). In another respect, *Dayco* concerns a dispute over *absolute* quantities, specifically the minimum number of "projections" the claim there required the patented hose assembly to have. Here, the dispute is over *partitive* quantities, specifically whether the claims read upon systems that process *all* or merely *some* of the field names. That said, plaintiff's main point still stands: The claims do not use "all," "each" or "every"—words that normally signify the meaning defendant would attach to the claim term.

The court requested further briefing from the parties on Federal Circuit precedent on the treatment of plural nouns. Plaintiff points to several cases, but none treats the precise question here; like *Dayco,* the cases define "plurality" or concern absolute quantities, not partitive quantities. Defendant argues that its construction is not based on the use of plural nouns as much as it is on the claims as a whole. Based on the court's own search, the parties may not be to blame for the paucity of cited caselaw.

The specification tends to support defendant's position. For example, in the summary of the invention, the patent speaks of filling "all of the fields in the form." Patent at 2:15. Similarly, a preferred embodiment functions to "fill [ ] all of the fields for which a match is made[, which] may be all of the fields in the form." Patent at 4:1–2. This implies that the invention must operate on all fields in a form. But the fact that the specification only describes filling all the fields of a form is not dispositive; relying too heavily on the

specification risks importing limitations from the specification into claims that contain no such limitation.

There may be something to defendant's suggestion that "[i]t is not the plural nouns, but the claim language itself that describes processing fields." Def Supp Br (Doc # 72) at 4:10–11. And indeed, the claim preambles put the processing of fields into the necessary context: Claim 1 claims a "system for providing data for fields" (which happen to be "in forms"), while claim 4 claims a "method for providing data for forms" (which happen to "hav[e] fields"). Compare Patent at 5:11–12 with Patent at 6:13–14. The object of claim 1 is to provide data for fields; claim 1 mentions forms only in its preamble and only to provide context by using the generic plural "forms." By contrast, claim 4 is directed at providing data for forms, and claim 4 refers to *a* form throughout. While there is presumptively no basis in the use of a plural noun for reading in "each" or "every," when that noun refers to a component part of a larger entity (as fields are components of forms) and the claim reads upon the larger entity, it is natural to understand the plural to imply "each" or "every." In the case of claim 1, the larger entity is but a sidelight. But in the case of claim 4, the claim is concerned with providing data for forms and one cannot provide data for a form without processing all its constituent parts.

**\*13** Accordingly, the court construes claim 1 as not requiring comparing of all field names, but claim 4 as containing such a requirement.

**"*retrieves*"**
The parties seem to dispute the construction of this term: Plaintiff proposes "accesses" and defendant proposes "gets." The term seems clear enough to the court without a construction.

Accordingly, the court declines to construe this term.

**"*fill entities*"**
The parties do not have a significant dispute over this term: Plaintiff proposes "the fill entity associated with a tag" and defendant proposes "the stored fill entity that the tag identifies." Plaintiff's proposal uses "associated" and thus better tracks the claim language.

Accordingly, the court construes "fill entities" as "the fill entity associated with a tag."

**"*when a match is made*"**
As noted above, a "match" is the result of the "comparing" step (or, in claim 4, step (d)). Plaintiff proposes that a "when a match is made" means "when there is a suitable association between a tag and a coded field name." Defendant proposes a construction of "when the tag is identical to the field name." Plaintiff bases its proposed construction on conventional dictionary definitions. See Pl Br (Doc # 43) at 27 (defining "match" as "a pair suitably associated <carpet and curtains that match+"). Defendant offers technical dictionary definitions from the field of computer science. See Def Br (Doc # 64) at 26 ("matching" is "the process of testing whether two data items are identical"; "match" is "a condition in which the values of corresponding components of two or more data items are equal").

There are two problems with plaintiff's proposed construction. First, *Markman* holds that claim construction is a question for the court. In context, construing "matching" as "suitably associated" leaves it up to the jury to decide just what "suitably" means. Second, the court finds plaintiff's proposed dictionary definition inappropriate because "suitably" is used in an aesthetic sense. Rather, defendant's proposed technical dictionary definitions offer constructions appropriate to the field of the invention. Both those definitions require an exact match—an "identical" match, or one where "data items are equal." The court adopts defendant's construction.

Accordingly, the court construes "when a match is made" as "when the tag is identical to the field name."

*"preparatory to"*
Plaintiff contends that this term means only that the recited procedures must be executed prior to submitting the form. Defendant contends that the final step of the claim makes the form ready to be submitted. Defendant's position seems to rest on its contention that the claims require the filling in of form fields—a result that would, indeed, appear to make the form ready to be submitted. But the court has rejected this view of the claims. Moreover, "preparatory to" suggests only that certain (identified) steps must occur before an event; it does not exclude the possibility that other (unidentified) steps might intervene between the last identified step and the event. Plaintiff's construction accurately captures this sense.

**\*14** Accordingly, the court construes "preparatory to" to mean that the procedures are executed prior to submitting the form.

*sequencing of the steps of claim 4*
Defendants assert that the events described in the "wherein" clause of claim 1 must occur in the sequence recited in the claim. Plaintiff contends that no specific order is required. The court has cited the relevant Federal Circuit authority above in analyzing the same question with respect to claim 1. The recited steps of claim 4 are:

   (a) associating fill entities with tags;

   (b) storing the fill entities associated with the tags in a memory of the computer;

   (c) downloading a form as code from a server on the Internet through a browser using the computer;

   (d) associating the tags of the stored fill entities with coded field names in the code of the downloaded form; and

   (e) causing the stored fill entities with tags matching coded field names in the code of the downloaded form to be associated with the coded fields to which the tags match.

Patent at 6:16–30.

The past participle "associated" in step (b) refers back to the present particle "associating" in step (a). Hence, step (b) must come after step (a). Steps (a) and (c) are not dependent on any previous event. The past participle "stored" in step (d) refers back to the present participle "storing" in step (b). Likewise, the past participle "downloaded" in step (d) refers back to the present participle "downloading" in step (c). Hence, step (d) must come after steps (b) and (c). Finally, step (e) must follow step (d) because there is no way to associate fill entities and fields until tags and field names have been associated.

Accordingly, the court concludes that steps (a), (b), (d) and (e) must occur in that order; and that step (c) can occur at any time before step (d).

*"browser"*
The parties list "browser" as a disputed term in their joint claim construction statement, Doc # 38 at 5, but do not brief their dispute.

Accordingly, the court declines to construe "browser" at this time. The parties may apply to the court for a construction if necessary.

**IV**

In sum, the court has construed many of the disputed terms of the patent according to their plan language and by reference to the intrinsic record. In several instances, the court has declined to issue a construction but has invited the parties to apply for a construction if it becomes necessary. If the parties desire such further constructions, they should propose a schedule to the court for such further proceedings. As set at the hearing, the parties shall file dispositive motions to be heard on November 3, 2005, at 2:00 pm.

IT IS SO ORDERED.

**End of Document** © 2013 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works. 13