UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAGE ELECTROCHROMICS, INC.,

    Plaintiff,

v.

VIEW, INC.,

    Defendant.

Case No. 12-cv-06441-JST

**ORDER DENYING MOTION TO STAY**

Re: ECF No. 200

Before the Court is Defendant's Motion to Stay Litigation Pending *Inter Partes* Review. ECF No. 200. The Patent Trademark Office has not yet acted on View's recently-filed petitions for *inter partes* review ("IPR") of certain patents at issue in this litigation. Nonetheless, View argues that, if IPR is granted, that process would be likely to simplify the issues for discovery and trial.

For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

Plaintiff SAGE Electrochromics, Inc. ("SAGE") filed this action in December 2012, alleging that Defendant View, Inc. (View") infringed SAGE's United State Patents Nos. 5,724,177 ("'177 patent") and 7,372,610 ("'610 patent"). ECF No. 1. Both companies design and manufacture electrochromic glass technology used in windows and are direct competitors in the market. Id. at ¶¶ 13, 22; ECF No. 200 at 19. Electrochromic glass, also known as dynamic glass, can change between clear and tinted states via electric charges. ECF No. 1 ¶ 13. SAGE alleges that it is a "pioneer in the creation and development of a market for its dynamic glass products, to create the emerging market for 'green windows' that exists today." ECF No. 206 at 8.

In February 2013, View filed its answer and asserted several counterclaims, alleging that

1  SAGE infringed View's United States Patent No. 8,243,357 (the "'357 patent") and seeking
2  declaratory judgment on the '177 and '610 patents. ECF No. 29 ¶¶ 12-37. In May 2013, View
3  amended its answer and counterclaims, alleging that SAGE also infringed View's United States
4  Patents Nos. 5,831,851 (the "'851 patent") and 8,432,603 (the "'603 patent"). ECF No. 58.

On April 11, 2014, SAGE filed a First Amended Complaint ("FAC"), alleging View also infringed four other SAGE patents--United States Patents Nos. 6,039,850 ("the '850 patent"); 5,830,336 ("the '336 patent"); 6,337,758 B1 ("the '758 patent"); and 7,193,763 B2 ("the '763 patent"). ECF No. 161 ¶¶ 13-76. SAGE allegedly served View with infringement contentions for the four newly asserted patents on May 16, 2014. ECF No. 200-1 ¶ 3. On August 8, 2014, pursuant to a Court order, SAGE allegedly served View a Preliminary Election of Asserted Claims which substantially narrowed the number of asserted claims across the total six SAGE patents from 67 to 24 claims. Id. ¶ 5.

In November 2014, View petitioned the Patent and Trademark Office ("PTO") for inter partes review ("IPR") of each asserted claim in three of the newly asserted patents. ECF Nos. 200-2, 200-5, 204-1. View also promptly filed its motion to stay on November 7, 2014. ECF No. 200. Technology tutorials and a claim construction hearing ("Markman hearing") for the newly asserted claims are scheduled to take place in January 2015. ECF No. 172. Intervenor-Plaintiff Leybold Optics, GMBH submitted a statement of neutral non-opposition to View's motion to stay, and SAGE opposes the motion. ECF Nos. 205-06.

## II. LEGAL STANDARD

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426–27 (Fed.Cir.1988) (internal citations omitted). In determining whether to stay a case pending review by the PTO, courts consider the following factors: (1) whether discovery in the case is complete and whether a trial date has been set; (2) whether a stay would simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. Cygnus Telecomms. Tech., LLC, Patent Litig., 285 F.Supp.2d 1022, 1023 (N.D.Cal.2005); see also Universal Elecs., Inc. v. Universal

1  Remote Control, Inc., 943 F.Supp.2d 1028, 1030–31 (C.D.Cal.2013) (applying the framework
2  applicable to motions to stay pending reexamination by the PTO to motions to stay pending the
3  newer *inter partes* review process). While case law supplies these general considerations, the
4  Court ultimately must decide whether to issue a stay on a case-by-case basis. Asetek Holdings,
5  Inc. v. Cooler Master Co., Ltd., No. 13–cv–00457–JST, 2014 WL 1350813, at *1 (N.D.Cal. Apr.
6  3, 2014).

## III. ANALYSIS

### A. Stage of the Proceedings

View argues that the first factor—the stage of the proceedings—"weighs heavily in favor of a stay." ECF No. 200 at 11. In support of its position, View argues that no trial date is set, discovery is ongoing, no depositions have been taken, no emails have been collected or produced, no expert testimony has been conducted, no dispositive motions have been scheduled or heard, and a claim construction proceeding for five of the nine patents-in-suit will not take place until January 2015. Id. at 12. SAGE counters that the litigation is not in fact in its infancy, but has "progressed significantly," as the parties have exchanged documents, responded to discovery requests, litigated a discovery dispute, underwent claim construction for four patents, and briefed claim construction on the remaining five patents. ECF No. 206 at 18.

The Court concludes that, although the complaint was first filed two years ago and four of the claims already have been construed, the case is not so far along as to weigh against a stay. Discovery has not significantly advanced and a trial date has not yet been set. No dispositive motions have been scheduled or heard, and only written discovery has taken place—neither party has taken any depositions or conducted expert testimony. In addition to the small scope of completed discovery, the nature of the completed discovery is less burdensome on the parties than the discovery that remains in this case. See Versata Software, Inc. v. Callidus Software, Inc., No. 14-1468, 2014 WL 6480522, at *5 (Fed. Cir. Nov. 20, 2014) (finding the timing of the proceedings strongly favored stay where no witnesses or experts were deposed, but many documents had been exchanged); Cypress Semiconductor Corp. v. GSI Tech., Inc., No. 13-CV-02013-JST, 2014 WL 5021100, at *2 (N.D. Cal. Oct. 7, 2014) (finding stay appropriate where

3

"parties have engaged in some discovery [but] . . . no depositions have been taken or scheduled, little expert discovery has been conducted, claim construction has only occurred with respect to the patents that are not the subject of this motion, and no dispositive motions have been scheduled or heard").

### B. Simplification of the Issues and Trial of the Case

View argues that there is a "judicially recognized likelihood that [] IPRs will simplify or eliminate issues" in most disputes. ECF No. 200 at 15. View proposes that granting stay in this case will also likely simplify or eliminate validity issues for at least three of the patents-in-suit. Id. at 14. SAGE argues that this factor weighs against stay because (1) IPR has not yet been instituted and (2) View's IPR petitions only challenge some—as opposed to all—of the overall asserted claims. ECF No. 206 at 17-18.

SAGE's first argument—that the potential for simplification does not weigh in favor of a stay when the PTO has yet to decide whether to institute IPR proceedings—is persuasive. Previously, this Court has held that "the filing of an IPR request by itself does not simplify the issues in question and trial of the case. Ultimately, the PTO may not institute IPR proceedings." TPK Touch Solutions, Inc v. Wintek Electro-Optics Corporation, No. 13-CV-02218-JST, 2013 WL 6021324, at *4 (N.D. Cal. Nov. 13, 2013). Here, View is correct that IPR, if granted, would increase the likelihood of simplification, but this argument is largely undercut by the reality that IPR has not yet been instituted. See id. at n.1 ("This Court believes the balance does not shift in [favor of stay] [] until the PTO has granted the [IPR] application.").

SAGE's second argument against the potential of IPR to simply the issues—that the pending petitions challenge some but not all of the patents asserted—is somewhat less persuasive. "[T]here can still be simplification of the issues when only some, but not all, of the claims asserted in litigation are challenged in [IPR]." Versata Software, Inc., 2014 WL 6480522, at *3. For this reason, "[a] proper simplification analysis would look to what would be resolved by [IPR] review versus what would remain." Id. In this case, although View has only filed IPR petitions for three of the six patents asserted by SAGE, View alleges that a fourth patent (the '850 patent) "is a continuation-in-part of the challenged '336 patent, and implicates overlapping subject matter with

the '336 patent including identical claim limitations." ECF No. 200 at 14. SAGE notes that only a third of the asserted claims are challenged by View's IPR petitions. Nonetheless, the claims and patents challenged by the IPR petitions relate to the issues in this case at their earliest stages, having just been added to the litigation this past April. Therefore, if those patents were to be found invalid as a result of IPR proceedings, the issues in play in the case would be significantly simplified.

Nonetheless, the uncertainty surrounding whether the PTO will elect to institute IPR proceedings weighs against a finding of likelihood of simplification of the issues. This factor therefore weighs against a stay at this time. The Court recognizes, however, that if IPR proceedings are instituted on three of the six patents at issue in this case, the potential for simplification of the issues would increase.

### C. Prejudice and Disadvantage

The last factor is "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." Delay alone does not usually constitute undue prejudice, because "parties having protection under the patent statutory framework may not 'complain of the rights afforded to others by that same statutory framework.'" KLA–Tencor Corp. v. Nanometrics, Inc., No. 05–cv–03116–JSW, 2006 WL 708661, at * 3 (N.D.Cal. Mar. 16, 2006) (quoting Pegasus Dev. Corp. v. DirecTV, Inc., 2003 WL 21105073, at *2 (D.Del. May 14, 2003)). Nevertheless, in evaluating prejudice, "courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent." Id. Such tactics include seeking reexamination on the "eve of trial or after protracted discovery." Id.

The District of Delaware has adopted a set of four sub-factors for evaluating prejudice that this Court finds helpful: "(1) the timing of the reexamination request; (2) the timing of the request for stay; (3) the status of reexamination proceedings; and (4) the relationship of the parties." Ever Win Int'l Corp. v. Radioshack Corp., 902 F.Supp.2d 503, 508 (D.Del.2012).

#### 1. Timing of Reexamination Request

View argues that this sub-factor does not weigh in favor of a finding of undue prejudice, because View filed its IPR petitions less than six months after Plaintiff served its infringement

contentions on the newly asserted patents and just two months after Plaintiff settled on a narrowed set of claims. ECF No. 200 at 16. SAGE argues that View did not act with diligence, because SAGE learned of View's intent to amend the complaint to add the contested patents in February 2014, but did not file its IPR petitions until November. ECF No. 206 at 15.

"This Court expects accused infringers to evaluate whether to file, and then to file, IPR petitions as soon as possible after learning that a patent may be asserted against them. Provided an accused infringer is diligent, delay due to preparing an IPR petition, ascertaining the plaintiff's theories of infringement, or otherwise researching the patents that have been asserted in an action does not unduly prejudice the patent owner." Asetek, 2014 WL 1350813, at *5. "[W]aiting until after receiving infringement contentions to analyze the claims alleged and then filing petitions for review does not cause undue prejudice." Cypress Semiconductor Corp., 2014 WL 5021100, at *4. See also Evolutionary Intelligence LLC v. Yelp Inc., No. C-13-03587 DMR, 2013 WL 6672451, at *9 (N.D. Cal. Dec. 18, 2013) (finding that petitioning for IPR five months after being served preliminary infringement contentions was reasonable timing).

View filed its petitions within the one-year statutory limit. See Asetek, 2014 WL 1350813, at *4 ("Delay alone [within the statutory deadline] does not usually constitute undue prejudice because parties having protection under the patent statutory framework may not complain of the rights afforded to others by that same statutory framework.") (citations and internal quotations omitted). Although SAGE claims that View could have acted more expeditiously, there is no support for the contention that View unduly delayed its filing of the IPR petitions. As View notes, as a result of its continued amendments to its complaint and infringement contentions, SAGE bears some responsibility for the already-protracted length of the litigation and thus cannot complain of the rights afforded to View by that same statutory framework. See KLA–Tencor Corp., 2006 WL 708661, at * 3.

View acted with reasonable diligence in filing its IPR petitions within six months of being served with SAGE's revised infringement contentions. Therefore, this factor does not support a finding of undue prejudice.

6

### 2. Timing of Request for Stay

Both parties concede that View promptly filed its motion to stay soon after it filed its IPR petitions, but SAGE argues that this sub-factor should carry little weight because View delayed filing its petition for IPR. ECF No. 200 at 17; ECF No. 206 at 16. As discussed above, the timing of View's petition for IPR does not support a finding of unreasonable delay. Accordingly, this sub-factor also does not support a finding of undue prejudice. Cypress Semiconductor Corp., 2014 WL 5021100, at *4 (finding the timing of request for stay weighed against finding of undue prejudice where defendant moved for stay promptly after institution of IPR).

### 3. Status of Reexamination Proceedings

View argues first that this sub-factor weighs in favor of granting stay because the PTO will more likely than not institute IPR proceedings, as statistics from the PTO's website indicate that to date it has instituted IPR proceedings for 67 percent of claims challenged. ECF No. 200 at 19 n.11. SAGE argues that this sub-factor weighs against a stay at this time, as the PTO has not yet decided whether to institute IPR proceedings. Because View filed its IPR petitions between November 6 and 19, 2014, SAGE will have until February to respond to the petitions. ECF No. 206 at 7-8. From that point, PTAB has three months to determine whether to grant the petitions. Id. (citing 35 U.S.C. § 314(b)).

This Court has previously concluded that this sub-factor weighs against issuing a stay when the PTO has not yet decided whether to grant IPR. See TPK Touch Solutions, Inc, 2013 WL 6021324, at *5 (citing Tokuyama Corp. v. Vision Dynamics, LLC, No. 08–cv–2781–SBA, 2008 WL 4532565, at *1 (N.D.Cal. Oct. 9, 2008) (distinguishing delay based on mere filing of IPR petition from delay based on ongoing IPR trial)). Because PTAB may not act on the petition until May 2015, this sub-factor weighs against granting a stay at this time.

### 4. Relationship of the Parties

SAGE urges that the relationship of the parties sub-factor weighs heavily against granting a stay, as the parties are direct competitors and a stay would cause SAGE substantial competitive harm. SAGE argues that the parties are the only two competitors in the high-end segment of the rapidly-developing market in architectural electrochromic glass technology. See Hayes

7

1  Declaration, ECF No. 206-2. View counters that SAGE cannot claim undue prejudice would
2  result from a stay as SAGE itself has delayed the resolution of the case "by waiting (largely
3  without justification) over a year into the litigation before adding four of the six asserted patents."
4  ECF No. 200 at 19. View also notes that SAGE has not yet filed a preliminary injunction,
5  undercutting its claim that it View's status as a direct competitor makes expeditious resolution of
6  this litigation necessary to prevent undue prejudice.
7      "[C]ompetition between parties can weigh in favor of finding undue prejudice."
8  VirtualAgility Inc. v. Salesforce.com, Inc., 759 F.3d 1307, 1318 (Fed. Cir. 2014); see also TPK
9  Touch Solutions, Inc, 2013 WL 6021324, at *5 ("Because [the parties] are direct competitors, the
10  risk of prejudice is higher to the non-moving party than it would be otherwise"). SAGE has
11  provided particularly compelling evidence of the competitive injury it could suffer if a stay were
12  granted. SAGE argues that the potential for prejudice is particularly high because View is
13  SAGE's only direct competitor in the high-end market. See id. at *6 (finding that a small number
14  of market participants increases the potential for competitive harm). If allowed to stall this
15  litigation, View could gain a foothold in the market by undercutting SAGE's pricing on new
16  building projects. ECF No. 206-2 at ¶ 27. SAGE argues the competitive injury posed by View is
17  amplified by the nascent nature of the marketplace for architectural electrochromic glass
18  technology, as "larger numbers of new projects are more likely to lead to incumbency effects as
19  developers and architects stick with what they have tried, either SAGE or View, depending on
20  which company they start out with." Id. at ¶ 26.
21      It is true that SAGE's failure to seek a preliminary injunction to date does bear on the
22  undue prejudice analysis. See VirtualAgility, 759 F.3d at 1319 (acknowledging that "there could
23  be a variety of reasons that a patentee does not move for a preliminary injunction," but noting that
24  a party's failure to seek a preliminary injunction "contradict[ed] [that party's] assertion that it
25  needs injunctive relief as soon as possible.") Nonetheless, the Court is not persuaded that SAGE's
26  failure to seek an injunction entirely outweighs the gravity of the competitive injury SAGE would
27  suffer if this litigation were stayed. This Court concluded above that, given the recent
28  amendments to the complaint and the lack of extensive discovery completed to date, the

1 proceedings are still in the somewhat early stages. Therefore, the fact SAGE has not yet filed for injunctive relief does not mean that SAGE would not suffer undue prejudice if the case were put on an indefinite hold.

The relationship of the parties' sub-factor weighs heavily in favor of a finding that undue prejudice could result from a stay of the litigation at this time. Because the status of the re-examination proceedings and the relationship of the parties weigh in favor of a finding of undue prejudice, the Court finds this factor weighs against a stay.

## III. CONCLUSION

The Court concludes that a stay is not merited at this time. Although the litigation has not advanced to the point where a stay would be untenable, the PTO has not yet decided whether to open IPR proceedings and SAGE has submitted compelling evidence of the competitive injury it would suffer as a result of a stay. The Court therefore denies View's motion for a stay without prejudice should View wish to renew the motion after the PTO has acted upon the IPR petitions.

**IT IS SO ORDERED.**

Dated: January 5, 2015

_____
JON S. TIGAR
United States District Judge